John Allen **GROOMS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 20177.

United States Court of Appeals, Eighth Circuit.

Aug. 3, 1970.

---

Joe D. Bell, Little Rock, Ark., for appellant.

James G. Mixon, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., on the brief.

Before MATTHES, Chief Judge, JOHNSEN, Senior Circuit Judge, and LAY, Circuit Judge.

MATTHES, Chief Judge.

John Allen Grooms and his codefendants, Jerry Jerome Fennell and James Clinton Thompson, were jointly charged with having transported, on or about December 4, 1969, a stolen motor vehicle from Alabama to Hardy, Arkansas, knowing that it had been stolen, in violation of 18 U.S.C. § 2312. Thompson pled guilty. Grooms and Fennell were severed and tried separately. They were found guilty and each was sentenced under the Federal Youth Correction Act, pursuant to 18 U.S.C. § 5010(b).

The only question for determination is whether the district court fell into error in permitting appellant's inculpatory oral statements given to a special agent of the F.B.I. on December 5, to be introduced into evidence.

Upon motion to suppress the statements on the ground that they were not voluntary, the district court conducted a plenary Jackson v. Denno [1] hearing. After the hearing had been concluded, during which appellant and his codefendants testified, Judge Henley found that the incriminating statements made by appellant were not the product of any mental or physical coercion or duress, that appellant had been fully advised of his constitutional rights prior to any interrogation, that he had knowingly and

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

intelligently waived the right to have counsel present and that his confession was "beyond a reasonable doubt," voluntary.[2]

Appellant does not contend on appeal and did not assert in the district court that the F.B.I. agent had failed to warn him of his constitutional rights as delineated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Neither does he contend he was subjected to any compulsion, duress or coercion by the F.B.I. agent or the Arkansas state officials. The main thrust of appellant's argument is that he confessed because he was laboring under a fear that he would be returned to the Georgia State Prison, from whence he had escaped on December 1, 1969. Additionally, appellant advances the arguments that irrespective of the warnings, which concededly were given, he was nevertheless entitled to have an attorney present during his interview by the federal officer; and that the confession was not admissible because he was not "taken forthwith to a magistrate for arraignment."

In order to place appellant's contention in proper perspective, we briefly review the pertinent facts. Appellant and his codefendants escaped from the Georgia State Prison on December 1, 1969. Apparently, the prison population was heavily dominated by members of the black race. Shortly prior to December 1, there was a racial disturbance in the prison and appellant and his codefendants, being white, were, according to their testimony, fearful of being injured. This fear allegedly motivated their escape. Because of the conditions prevailing in the Georgia State Prison, appellant asserted in the district court that rather than be returned to the Georgia prison, he decided he would admit being a party to the Dyer Act offense; that he preferred being a federal prisoner than an inmate of the Georgia prison.

During the night of December 2, the escapees stole the automobile in Birmingham, Alabama. They transported it to a point near Hardy, Arkansas, where, on the morning of December 4, they were detected by an Arkansas state trooper in the automobile which was stationed on the shoulder of U.S. Highway 63. After a brief interview, during which the subjects failed to furnish identification, appellant and Fennell fled from the trooper. Both were shortly apprehended, and all three were placed in the Ash Flat, Arkansas, jail on the morning of the 4th. Thereafter, the Arkansas authorities proceeded to investigate the origin of the automobile, which bore an Alabama license plate, and the identity of the occupants.

Milford Runnels, a special agent of the F.B.I., did not enter the case until the morning of December 5. Upon learning that the automobile had been stolen in Birmingham, Alabama, he proceeded from Jonesboro, Arkansas, to Ash Flat, a distance of approximately 70 miles. The agent first interviewed Thompson, but not until he had warned him in writing and orally of his constitutional rights and not until Thompson had signed a waiver. Thereupon, Thompson freely and voluntarily admitted that he, appellant and Fennell, had escaped on December 1, had stolen the automobile in Birmingham the night of December 2, and had driven to near Hardy, Arkansas, where it ceased to function.

Appellant, however, after being fully warned of his rights, admitted that he was an escapee, but denied any participation in the theft of the automobile. His story was that the trio had been picked up by a stranger in Birmingham and transported in the automobile to the place where they were first observed in Arkansas; that the driver of the automobile had abandoned it. It should be stated that Thompson was interviewed by the F.B.I. agent from 10:45 a.m. until 11:34 a.m. on December 5. Grooms

---

2. The issue of the voluntariness and the weight to be given it was under appropriate instructions resolved by the jury.

was interviewed from 12:10 p.m. until 12:25 p.m. on the same day. Shortly after appellant denied any implication in the theft and transportation of the automobile, Agent Runnels informed appellant in response to an inquiry, that he probably would be returned to Georgia. Momentarily thereafter, Grooms informed the agent that his previous account of what took place was false and that he desired to give the agent a truthful version. After the agent returned from lunch, appellant and Fennell both freely and voluntarily admitted their implication in the theft and transportation of the automobile. Both were again fully apprized of their constitutional rights before they made the incriminating statements.

■ Appellant has cited no authority, and we are satisfied there is none to support his novel and ingenious theory that because he harbored some fear and apprehension of danger to his person if he were returned to the Georgia prison, his confession was legally involuntary and consequently inadmissible. There is not a scintilla of evidence in this record to warrant a finding or inference that Agent Runnels, the Arkansas state trooper, the sheriff, or any other person seized upon appellant's self-created plight to induce him to admit his participation in the Dyer Act offense. Indeed, all the evidence is to the contrary. We therefore find ourselves in complete accord with Judge Henley's finding that the confession was not the result of any illegal compulsion.

We find appellant's second argument, towit, that the confession was inadmissible because he was not provided with counsel during the interrogation, equally impotent and wholly lacking in substance.

■ The procedural safeguards afforded a person who is subjected to custodial interrogation are delineated in Miranda v. Arizona, *supra*. Those safeguards were scrupulously and meticulously followed by Agent Runnels, the interrogating officer. After appellant had been fully advised in writing and orally of his constitutional rights he voluntarily, knowingly and intelligently waived the right to have counsel present before and during the interrogation. Having pursued that course, appellant's claim that his confession was inadmissible because counsel was not present must be rejected.

■ Contrary to appellant's final contention, his confession was *not* rendered inadmissible because of the failure to take him "forthwith" to a magistrate after he had been apprehended by the Arkansas state trooper. The principle promulgated in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819 (1943), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2a 1479 (1957), is not applicable. Here, as in many of the reported cases, the appellant was in the custody of local Arkansas officers from some time during the morning of December 4 until around the noon hour on December 5, when the federal government entered the case. Unlike the situation in Anderson v. United States, 318 U.S. 350, 63 S. Ct. 599, 87 L.Ed. 829 (1943), there was no working arrangement between the Arkansas state trooper, the local sheriff or any other Arkansas officer, and the special agent of the F.B.I. There is no evidence of any collaboration between the federal and Arkansas authorities indicating that the appellant was being held for questioning by Agent Runnels. To the contrary, it is clear that Agent Runnels was a total stranger to the case until the night of December 4, when he learned of a possible Dyer Act violation. The conclusion is inescapable that appellant was exclusively under the control of the Arkansas authorities until around 12:00 p.m. on December 5, when he was first interrogated by Agent Runnels. The incriminating statements were made approximately one and one-half hours later with an intervening break for lunch by the agent.

The events following the interrogation belie any intent on the part of Agent Runnels or the local officers to unneces-

sarily delay appellant's appearance before a magistrate. Immediately after the agent had completed his interview with appellant (1:36 p.m.), he undertook to file a complaint before the United States Commissioner at Jonesboro, Arkansas. That Commissioner was not available on December 5th or 6th. Thereupon, Runnels contacted the F.B.I. office in Little Rock, Arkansas. This led to the filing of a complaint on the morning of December 6, before the United States Commissioner in Little Rock, the issuance of an arrest warrant by that Commissioner, and the arrest of appellant on the same day. Under the re-. cited facts, it is manifest that there was full compliance with the provisions of Rule 5(a), Fed.R.Crim.P. Furthermore, the action followed here finds support in a solid body of case law. Tucker v. United States, 375 F.2d 363 (8th Cir.), cert. denied, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967) (Dyer Act violation); Young v. United States, 344 F.2d 1006 (8th Cir.), cert. denied, 382 U.S. 867, 86 S.Ct. 138, 15 L.Ed.2d 105 (1965) (Dyer Act violation); Holt v. United States, 280 F.2d 273 (8th Cir. 1960), cert. denied, 365 U.S. 838, 81 S.Ct. 750, 5 L.Ed.2d 747 (1961); Butterwood v. United States, 365 F.2d 380 (10th Cir. 1966), cert. denied, 386 U.S. 937, 87 S. Ct. 960, 17 L.Ed.2d 810 (1967) (Dyer Act violation); Smith v. United States, 390 F.2d 401 (9th Cir. 1968); Gray v. United States, 394 F.2d 96 (9th Cir. 1967); Gregory v. United States, 364 F.2d 210 (10th Cir. 1966) (Dyer Act violation); United States v. Vita, 294 F.2d 524 (2d Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962).

We have carefully considered 18 U.S.C. § 3501(c), and cannot agree that the provisions of this statute compel a holding that appellant's confession was inadmissible. A careful study of the provisions of § 3501(c), and review of the legislative history and purpose of the act,[3] leads us to conclude that the

Congress did not by the enactment of § 3501(c) intend to broaden the scope and effect of the principle promulgated in the *McNabb* and *Mallory* decisions, or to alter the provisions of Rule 5(a), Fed. R.Crim.P., or to nullify the body of case law which has sanctioned the in-custody interrogation and the subsequent arraignment that was followed in this case.

We are satisfied that appellant received a fair trial and that there is no merit in the issue presented.

The judgment is affirmed.

---

3. 1968 U.S.Cong. and Adm.News, p. 2112 et seq.