**UNITED STATES of America,
Appellee,**

v.

**Benigno MARRERO, Appellant.**

*No. 118, Docket 71–1008.*

United States Court of Appeals,
Second Circuit.

Argued Sept. 23, 1971.

Decided Oct. 26, 1971.

Friendly, Chief Judge, concurred and filed opinion.

John H. Gross, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., Peter Rient, Asst. U. S. Atty., New York City, of counsel), for appellee.

Henry Huntington Rossbacher, Harry C. Batchelder, Jr., New York City, for appellant.

Before FRIENDLY, Chief Judge, and MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

After a trial by jury before Judge John M. Cannella in the District Court for the Southern District of New York, Benigno Marrero was convicted of receiving, concealing and facilitating the transportation and concealment of heroin in violation of 21 U.S.C. § 173 and § 174 and of purchasing, dispensing and distributing cocaine not in or from the original stamped package in violation of 26 U.S.C. § 4701, § 4703, § 4704(a), § 4771(a) and § 7237(a). As a second of-

fender he was sentenced to 10 years imprisonment on each count to be served concurrently.

On February 19, 1970 at approximately 8:00 p. m., an agent of the Federal Bureau of Narcotics, accompanied by other officers and armed with a search warrant, knocked on the door of Marrero's apartment at 113 West 128th Street in Manhattan. They announced their identity and the fact that they had a search warrant. Hearing noises inside but no response, the agents broke in. Upon entering, they observed that the window grating had been ripped off the window opening onto the fire escape. Another agent stationed in the courtyard outside had observed a man leave the apartment by the fire escape and go up to the roof. The agents proceeded to the roof where they found Marrero and placed him under arrest. At the time, he wore a T-shirt and trousers, but no overcoat or shoes, and was carrying a set of keys to the apartment from which he had just fled. The officers immediately warned him of his constitutional rights, but he made no statements at that time.

In the apartment they found a number of plastic and paper bags containing some 140 grams of heroin and 194 grams of cocaine and a large quantity of narcotics paraphernalia.

Following his arrest Marrero was taken to the office of the Bureau of Narcotics for processing. He was not interrogated. He was then lodged in the Federal House of Detention on West Street for the night. At about noon the next day, February 20, he was brought to the United States District Court for the Southern District of New York for arraignment. Prior to being arraigned Marrero was interviewed by an Assistant United States Attorney for approximately forty minutes. After being advised of his constitutional rights, Marrero admitted that he had been on the

roof trying "to get away" and further admitted ownership of the apartment.

■ A pretrial suppression hearing pursuant to 18 U.S.C. § 3501 was conducted by Judge Cannella out of presence of the jury. On the suppression hearing the appellant was given full opportunity to contest the voluntariness of the statement made to the Assistant United States Attorney. The questions of his alleged narcotic intoxication, withdrawal symptoms and inability to understand English were fully investigated, and almost thirty pages of the record are devoted to them. It was established that before the interview commenced, he was apprised of his right to remain mute, but appellant replied that he would make up his mind as he went along. He admitted that he had lived in the United States for twenty-six years and that he understood "quite a bit" of English. His own attorney stated to the court that the appellant "understands English perfectly" but claimed that there were some words he couldn't say well in English. At that point a Spanish interpreter was made available to him, and her services were dispensed with only after it became obvious that he did understand and could reply in English. The experienced narcotic agent, who arrested appellant and who was present at the interview, testified that appellant was not under the influence of narcotics at the time of his arrest. The appellant, while testifying that he was sick during his detention, admitted that he had not asked for medical assistance. There is no reason whatever for this court to disturb the finding of voluntariness made by the trial judge at the suppression hearing.

■ On appeal appellant urges for the first time that the delay from the time of his arrest at about 8:00 p. m. till the time of his arraignment at about 12:40 p. m. the next day, mandates exclusion of his statement under the so-called *McNabb-Mallory* rules [1] which are

---

1. In order to insure compliance with Rule 5(a), Fed.R.Crim.P., which requires "any person making an arrest without a warrant" to "take the arrested person without

the forerunners of the present statutory provision 18 U.S.C. § 3501(c) which is controlling here.

■ At the outset, we hold that the statement made by the defendant would be clearly admissible under the *McNabb-Mallory* cases. In United States v. Price, 345 F.2d 256 (2d Cir.), cert. denied, 382 U.S. 949, 86 S.Ct. 404, 15 L. Ed.2d 357 (1965), this court held that a 12 hour delay between arrest and arraignment did not affect the admissibility of written and oral admissions made by defendants under circumstances closely paralleling the facts in this case. There the arrest was made at 11:00 p. m.; the defendants were taken to a local police station and detained for an hour, then taken to the local office of the Alcohol and Tobacco Tax Unit for routine processing. During that time one of the defendants made a statement which he did not sign until 4:30 a. m. They were then lodged in the Federal House of Detention until 10:00 a. m. the next morning when they were brought before an Assistant United States Attorney and questioned, during which interval another defendant admitted his guilt. They were arraigned at 11:00 a. m. A panel of this Court held there: *"Mallory* might apply if the officers were shown to have delayed arraignment for the sole purpose of subjecting them to constant interrogation, or had not informed them of their constitutional rights." 345 F.2d at 261.

■ In finding no unnecessary delay after the 11:00 p. m. arrest this court further held: "At that hour no Commissioner would have been in his office and there has been no claim that a commissioner was available then. (Cases cited.) The same reasoning applies to the 45 minutes or so during which the complaint was drawn up and Riley made his oral statement, so that statement was

also properly admitted against him." 345 F.2d at 262. In this case there is also no claim that a commissioner or magistrate was available at night after the 8:00 p. m. arrest. There is no evidence at all of any systematic or constant interrogation during a period of intentional delay. The appellant was routinely processed, given the *Miranda* warnings and was not examined until the next day when he made the admissions at the customary pedigree interview preparatory to arraignment. This took about forty minutes and has none of the elements of persistent questioning present in the cases appellant relies upon, such as United States v. Middleton, 344 F.2d 78 (2d Cir. 1965), where there was approximately four hours of questioning of an addict who admitted guilt and then was lodged overnight before arraignment. That case, moreover, did recognize that overnight lodging for purpose of arraignment the next morning does not violate the *McNabb-Mallory* doctrine. United States v. Middleton, 344 F.2d at 82. There is ample authority for this proposition. See United States v. Grandi, 424 F.2d 399, 402–403 (2d Cir. 1970); United States v. Ladson, 294 F.2d 535 (2d Cir. 1961), cert. denied, 369 U.S. 824, 82 S.Ct. 840, 7 L. Ed.2d 789 (1962); United States v. Vita, 294 F.2d 524 (2d Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L. Ed.2d 788 (1962). It is not the lapse of time but the use of the time, when the commissioner or magistrate is unavailable, to employ the condemned psychologically coercive or third degree practices which is proscribed by the cases. There are no such elements in this case.

Being persuaded that the statement made by the defendant was admissible under the *McNabb-Mallory* doctrine, we are faced with the question whether Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §

---

unnecessary delay before the nearest available commissioner", the Supreme Court mandated in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and Mallory v. United States, 354

U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) that any evidence taken during a period of unnecessary or unreasonable delay in arraignment may not be admitted in federal criminal proceedings.

3501 [2] requires exclusion of a confession heretofore admissible. This court has held that § 3501 was not intended to expand the protection of potential criminal defendants beyond the scope established by the *Miranda* cases. United States v. White, 417 F.2d 89, 92 (2d Cir. 1969), cert. denied, 397 U.S. 912, 90 S.Ct. 910, 25 L.Ed.2d 92 (1970).

We think that the legislative history of § 3501 makes it equally clear that it was not intended to expand the protection of potential criminal defendants beyond the scope established by the *McNabb-Mallory* cases. This has been squarely held in United States v. Halbert, 436 F.2d 1226 (9th Cir. 1970) and in Grooms v. United States, 429 F.2d 839 (8th Cir. 1970). *Halbert* explores the legislative history of § 3501 in detail and is persuasive that Congress certainly did not intend to broaden the protection afforded under *McNabb-Mallory.* If anything, its motivation was to narrow it. In light of the fact that delays of more than six hours have frequently been found proper under *McNabb-Mallory* for reasons other than problems of transportation to the nearest magistrate, it can hardly be possible that Congress

2. § 3501. Admissibility of confessions

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

now intended to bar automatically all such confessions.

■■■ The admissibility of confessions in federal criminal prosecutions is governed by § 3501 which must be read as a whole. § 3501(a) makes the test of admissibility, voluntariness. It further requires the trial judge to conduct a hearing, out of the presence of the jury, to determine any issue as to voluntariness. § 3501(b) lists five factors including the time lapse between arrest and arraignment which shall be taken into consideration. But he shall take into consideration "all the circumstances surrounding the giving of the confession" and "[t]he presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness." In view of this scope of discretion, it could not have been the intent of the statute to provide an automatic six hour cut-off rule in § 3501(c). Delay in excess of the six hours not attributable to transportation "is a factor in determining the voluntariness of the confession" 1 C. Wright, Federal Practice and Procedure § 74, at 89 (1969). While § 3501(c) provides that a confession made within six hours of arrest, absent some showing of involuntariness is admissible, it does not provide that a longer delay automatically precludes admissibility. (1 C. Wright, *supra* § 72, at 74 n. 41.) There was no sinister purpose here in lodging the defendant overnight. Magistrates and commissioners are not available at night in the Southern District and there is no nearest magistrate to whom a person charged with a crime can be reasonably transported. It cannot be the intent of the statute viewed in its totality that the only discretion the trial judge can exert in extending the six hour limitation, is in the area of transportation. § 3501(c) necessarily subsumes the availability of a magistrate. Overnight lodging is certainly no more offensive than transportation.

This interpretation of the statute is supported not only by the cases, but is in accordance with the rationale of the *McNabb-Mallory* cases which proscribes not the mere lapse of time between arrest and arraignment, but its abuse by pertinacious and harassing interrogation.

Whether, as a matter of policy, there should be routinely available on a twenty-four hour basis both assistant United States attorneys and magistrates, particularly in an urban setting where crime is commonplace and arrests in the night are not even newsworthy, is a proposition not before us. We simply hold that this confession was admissible under § 3501.

■■■ One final point should be considered. In the suppression hearing before the trial judge here to test the voluntariness of the statement, defense counsel did not urge lapse of time between arrest and arraignment as a factor to be considered by the court. However, the record demonstrates that the time of the arrest, the fact of detention, the time of the admission and the time of the arraignment were all made known to the trial court judge who dismissed the motion to suppress. The failure of the judge here to advert specifically to the period of detention which preceded the admission, even though it was not urged, could, in no event, amount to more than harmless error.

■■■ This is not a case where the defendant confessed his guilt of the crime charged; he simply admitted owning the apartment and admitted that he was fleeing from the scene. Appellant's principal point now on appeal is that the admission of flight allows an inference of guilt which was emphasized in the trial court's charge to the jury. The circumstantial evidence of the defendant's flight was so overwhelming that his statement is superfluous and its admission clearly harmless. Harrington v. United States, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The evidence is uncontradicted that the agents who

broke in saw that the grill had been ripped off the window leading to the fire escape; the agent posted on the street observed a man leave the apartment through the window and climb up the fire escape to the roof; the arresting officers found the defendant on the roof on a February evening in a T-shirt, without shoes or an overcoat. The fact that he was fleeing is so overwhelmingly demonstrated that there is no reasonable possibility that his admission contributed anything to his conviction.

Affirmed.

FRIENDLY, Chief Judge (concurring):

I assume that when the majority opinion says "The admissibility of confessions in federal criminal prosecutions is governed by § 3501 which must be read as a whole," it does not decide by implication on the serious issues whether that section, added by the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 197, 210, intended to overrule Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or would be constitutional if it did. Cf. United States v. Lamia, 429 F.2d 373, 377 (2 Cir.), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970); 1 Wright, Federal Practice and Procedure § 76 at 121–22 (1969). Here the Assistant United States Attorney gave the warnings required by that decision. It is too clear to require discussion that, both under pre-1968 and post-1968 standards, the overnight lodging of Marrero in the Federal House of Detention was not an "unnecessary delay" within F.R.Cr.P. 5(a). On the other hand, if the matter were *res nova* in our court, I would find that the detour through the Assistant United States Attorney's office when a commissioner was available after this long period was such an "unnecessary" delay.

However, we are now spared the necessity for debating the precise effect or the correctness of previous decisions of this court on the application of Rule 5(a). Section 3501(b) states that "the time elapsing between arrest and arraignment of the defendant making the confession" is simply one factor to be considered by the trial judge in determining voluntariness. Section 3501(c) prohibits a ruling of inadmissibility *solely* on the ground of delay if the confession was given within six hours after arrest plus such additional period as is found to be reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate, a phrase which can legitimately be read as also including the availability of the magistrate because of the hour of the day. The real issue in this case is whether § 3501(c) implicitly requires a finding of involuntariness when its conditions have not been met, as in my view they were not here. On the basis of the language and the legislative history, I agree with the reasoning in United States v. Halbert, 436 F. 2d 1226, 1231–1237 (9 Cir. 1970), that the answer should be in the negative. On that basis, as well as on the ground of harmless error, I concur.