**UNITED STATES of America**

**v.**

**Concepcion RUBIO, a/k/a "Carol Rubio", and Richard Rosado, Defendants.**

**81 Cr. 0413 (KTD).**

United States District Court,
S. D. New York.

Nov. 10, 1981.

John S. Martin, Jr., U. S. Atty., New York City, for plaintiff; Peter J. Romatowski, Asst. U. S. Atty., New York City, of counsel.

Otto F. Fusco, New York City, for defendant Rubio.

Gerald J. McMahon, New York City, for defendant Rosado.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendants Richard Rosado and his wife Concepcion Rubio were arrested by Drug Enforcement Administration ["DEA"] agents on June 6, 1981, and subsequently charged with three counts of violations of federal narcotics laws. Defendant Rosado asks for the following relief from this Court:

1. Suppression of all statements and evidence obtained prior to arraignment.

2. Suppression of all statements made to Assistant United States Attorney ["AUSA"] Romatowski.

3. Suppression of all evidence seized pursuant to warrants 81–787, 81–764, 81–779 and 81–788.

4. An order for the disclosure of the name, address and prior criminal record of the government's confidential informant and all relevant information regarding this informant.

5. Reduction of bail.

Defendant Rubio joins in requests 3, 4 and 5 and additionally moves for a separate trial.

A hearing was held before me to ascertain facts relevant to any statements made by defendant Rosado. Based on this hearing and the papers submitted by the parties, the following shall constitute my findings of fact and conclusions of law regarding defendants' motions.

## THE FACTS

On Saturday, June 6, 1981, the defendants met with undercover DEA Agent Castillo and the informant "Dennis" in the lounge of the Holiday Inn on West 57th Street in Manhattan. The government alleges that in that lounge a deal for the purchase of two kilograms of cocaine for a price of $100,000 was agreed upon. Subsequently, while the foursome was leaving the lounge, the defendants were arrested.

A search of the defendants' incident to their arrest revealed: a .38 caliber revolver, a kit, allegedly used to test the purity of cocaine, a total of $956 in cash, two packets of heroin and a blue bag containing a bottle of Clorox and a triple beam balance scale.

The defendants were then taken to DEA headquarters for arrest processing. Mr. Rosado was strip-searched and questioned by the DEA agents after being advised of his *Miranda* rights. During this routine arrest procedure, DEA Agent Hall was in contact with the United States Attorney's

Office in an effort to procure a search warrant for the defendants' apartment. The Assistant United States Attorney in contact with Agent Hall told him that a U.S. Magistrate was not available to arraign the defendants.

The defendants were then driven from DEA headquarters to the Metropolitan Correction Center ["MCC"]. Agent Hall testified that the DEA intentionally delayed lodging the defendants at the MCC until the search warrant was executed on the Rosado-Rubio residence. The DEA agents feared that Mr. Rosado would call his brother as soon as he was admitted to the MCC and that contraband would be removed from the apartment before the search. The defendants were finally lodged at the MCC at 6:03 p. m.

The defendants remained at the MCC and were not questioned further until two days later, Monday, June 8, 1981. At approximately 10:30 a. m. defendant Rosado spoke with AUSA Romatowski after again receiving his *Miranda* warnings. Later that afternoon, the defendants were arraigned and bail was set at $50,000 each. Both defendants still remain in custody.

I. *Statements Made to DEA Agents and AUSA Romatowski*

Defendant Rosado alleges that his post arrest statements were involuntarily procured through unreasonable delay and therefore should be suppressed. In support of this motion, defendant argues that no *Miranda* warnings were issued until Monday, June 8, 1981, and also points to a two-day lapse between arrest and arraignment.

■ Defendant Rosado testified that he did not receive his *Miranda* warnings until Monday, June 8, 1981, when he was brought to AUSA Romatowski's office. However, Agent Hall testified that he personally is-

sued the *Miranda* warnings at DEA headquarters immediately following the arrest. The failure of Agent Hall to remember if Mr. Rosado stated he understood the warnings does not render invalid Rosado's waiver of his right to remain silent. There need not be an express waiver of *Miranda* rights when Rosado's conduct infers his understanding of his rights. *See North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

■ Mr. Rosado has not presented any facts to show improper DEA activity. He was questioned and advised of his constitutional rights shortly after his arrest by Agent Hall. Mr. Rosado was told that he was arrested for alleged drug trafficking. No evidence suggests that Mr. Rosado was coerced into making any statements through physical or mental abuse.[1] Rosado was not subjected to protracted interrogation; he was questioned for at most one hour at DEA headquarters. The DEA agents' suggestion to Rosado that he cooperate was well within constitutional limits. *United States v. Pomares*, 499 F.2d 1220, 1222 (2d Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974).

At the hearing, Rosado impressed me as a man well capable of understanding his rights and asserting them. Far from being the pliant victim which he asserts in his moving papers, it is clear that he understood his rights and was in full command of his faculties when he made the statements which he now seeks to suppress. For these reasons, the defendant's statements made during arrest processing are deemed voluntary and admissible.

■ The statements made to AUSA Romatowski pose a different problem. The defendants were arrested at 1:00 p. m. on Saturday afternoon when no Magistrate was available.[2] The one half hour Roma-

---

[1]. Mr. Rosado did not receive medical attention for his substantial leg wounds until after his arraignment. However, his condition does not negate the voluntariness of his statements. It does not appear that the leg wounds affected his judgment, nor did the wound prevent Mr.

Rosado from travelling to the Holiday Inn on June 6, 1981.

[2]. This Court explained at the suppression hearing that a Magistrate is only required to be physically present in the United States Court-

towski interrogation took place on Monday morning shortly before the arraignment. While Mr. Rosado was duly informed by AUSA Romatowski of the charges against him and his constitutional rights, the two day lapse between arrest and questioning violates the six hour restriction imposed by 18 U.S.C. § 3501(c). However, this six hour time limit is not "iron clad" when the facts manifest reasonableness. The purpose of the time limit is to ensure that the defendant's will is not broken down and to prevent coercion by the interrogators. *United States v. Reed*, 572 F.2d 412, 426 (2d Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978).

The Second Circuit has reiterated the inherent flexibility of the six hour limitation:

Magistrates and commissioners are not available at night in the Southern District [nor on Saturdays after noon or on Sunday] and there is no nearest magistrate to whom a person charged with a crime can be reasonably transported. It cannot be the intent of the statute viewed in its totality that the only discretion the trial judge can exert in extending the six hour limitation, is in the area of transportation. § 3501(c) necessarily subsumes the availability of a magistrate. Overnight lodging is certainly no more offensive than transportation.

This interpretation of the statute is supported not only by the cases, but is in accordance with the rationale of the *McNabb-Mallory* cases which proscribes not the mere lapse of time between arrest and arraignment, but its abuse by pertinacious and harassing interrogation.

*United States v. Marrero*, 450 F.2d 373, 378 (2d Cir. 1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972).

No evidence demonstrates purposeful postponement of arraignment by law enforcement officials. An unsuccessful attempt to locate a Magistrate was made. Additionally, there is no evidence of either

a lengthy or hostile interrogation. Mr. Rosado was only questioned for a brief period of time by Mr. Romatowski. Indeed, Mr. Rosado's testimony indicates that this questioning was not coercive.

After an examination of all these circumstances, *United States v. Reed, supra*, it appears that the two-day lapse was reasonable.[3] Accordingly, I find that Mr. Rosado's statements to the DEA agents and to AUSA Romatowski were voluntary and therefore defendants' motions to suppress these statements are denied.

II. *Search Warrants*

Defendants Rosado and Rubio contest the probable cause foundation and the requisite particularity of three search warrants executed on their apartment and safe deposit boxes at the Bowery Savings Bank and Chemical Bank.

A. Warrant 81–787

Defendants allege that the warrant issued on their home is a "general warrant" prohibited by the Fourth Amendment. *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). The pivotal question is whether warrant 81–787 condoned an unspecified exploratory search of the Rosado home or was limited to particular items for which probable cause existed. After examining the search warrant and its accompanying affidavit, it appears that the warrant is consonant with the Fourth Amendment.

Warrant 81–787 authorized a DEA search for:

narcotics and other drugs, drug paraphernalia, customer lists, monies, weapons and ammunition, safety deposit records and keys, false passports and other false identification, and other records, documents and papers which constitute evidence of a conspiracy to illegally possess and distribute narcotics and dangerous drugs, which is being carried out in violation of Title

---

house until 12 noon on Saturday and not at all on Sunday.

3. The availability of arraignment in state court before Monday is not conclusive evidence of unreasonableness, but merely one factor to be considered.

21, United States Code, Sections 841 and 846.

DEA Agent Castillo's affidavit recites sufficient facts to substantiate a finding of probable cause.[4] Agent Castillo avers:

> I negotiated with Rosado and Rubio, posing as a supplier of wholesale quantities of cocaine. Rosado and Rubio agreed to purchase two kilograms of cocaine from me for a total of $100,000. In addition, Rosado made the following statements to me:
>
>> (a) He described a list of customers he had in his apartment (3D) in the Bronx.
>>
>> (b) He advised me that he kept the money for our transaction in safety deposit boxes he maintained at five banks.
>>
>> (c) He and Rubio smuggled cocaine into this country on several occasions from South America using false passports.
>>
>> (d) He asked me to pick him up at his apartment in the Bronx on the following morning and drive him to his bank(s) where he would get the money for our cocaine transaction.

The affidavit also records the evidence seized incident to arrest: a loaded handgun, a kit for testing cocaine and two "dime" bags of heroin.

Defendants allege that the warrant is unduly ambiguous and cite four clauses from the warrant in support of their claims: "other drugs," "weapons and ammunition," "other false identification" and "other records, documents and papers." When reading the warrant in a common sense fashion, *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), however, it is clear that the clauses are sufficiently specific in light of the general knowledge of the DEA agents and the virtual impossibility of more exact descriptions. *United States v. Scharfman*, 448 F.2d 1352, 1355 (2d Cir. 1971), *cert. denied,*

405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972).

The "weapons and ammunition" phrase is justified by the gun found in Rubio's purse along with the acknowledged fact that guns frequently accompany drug dealers. *United States v. Oates*, 560 F.2d 45, 62 (2d Cir. 1977). Defendants' reading of the "other drugs" clause is out of context. When the warrant is read as a whole, it becomes obvious that only contraband evidencing a drug conspiracy was sought. An indiscriminate seizure of all drugs in defendants' home was not authorized. The remaining contested clauses reflect the general nature of defendant Rosado's assertions to Agent Castillo during the negotiation stages. The restrictive language of the warrant ensured that the scope of the warrant was limited to evidence connected to this drug trafficking charge.

**B.  Warrants 81–764 and 81–774.**

■ Agent Castillo's affidavit attached to the search warrants for safe deposit boxes at the Chemical Bank and the Bowery Savings Bank is the same affidavit supporting Warrant 81–787. As earlier stated, Agent Castillo related in this sworn statement discussions with Mr. Rosado regarding safe deposit boxes where proceeds from narcotics transactions were kept. In addition, a key was found in Mr. Rosado's car for a safe deposit box.

The warrants in question are similar to the ones presented to Magistrate Sinclair and upheld on appeal in *United States v. Dunloy*, 584 F.2d 6 (2d Cir. 1978). In *Dunloy*, the affidavit was based on second hand information as to drug related activities involving a safe deposit box; in the instant case, Agent Castillo's statement is based on a first hand conversation with Mr. Rosado. The affidavits and riders submitted in support of Warrants 81–764 (Chemical Bank) and 81–774 (Bowery Savings Bank) provide

---

4.  Rosado and Rubio do not raise a *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) issue. Therefore, I need not

consider the veracity of Agent Castillo's affidavit.

ample grounds for a finding of probable cause.[5]

#### C. Warrant 81–788.

■ Defendant Rosado does not contest the probable cause foundation or the particularity of this warrant authorizing the search of the blue canvas bag found in the trunk of the defendants' Datsun. The basis for suppression of the cash seized pursuant to the warrant lies in the acknowledgement by Agent Castillo at the September 21, 1981 hearing that he did not in fact witness the search as he so subscribed on the warrant's return. While I do not condone Agent Castillo's carelessness, this ministerial defect does not merit the severe remedy of suppression.

The exclusionary rule will apply only if the violation of Fed.R.Cr.P. 41 results in "(1) . . . prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir. 1975). Defendant Rosado suffered no prejudice. The search itself and the probable cause supporting the search was not tainted by Castillo's error. Agent Castillo complied with the essence of Rule 41(d): he promptly returned the warrant two days after its issuance, described all inventory seized, and listed all witnesses to the search. Furthermore, no evidence manifests Agent Castillo's wilfull intent to violate Rule 41. Thus, defendant's motion to suppress evidence seized in warrant 81–788 is denied.

#### III. *Disclosure of the Informant.*

■ Defendants Rubio and Rosado request that the informant known to them as "Dennis" be produced along with his address and any criminal record. At this preliminary stage, defendants must prove that the necessity for this information outweighs the government's desire to protect its informants and encourage co-operation. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

Disclosure is only appropriate here if the informant Dennis supplied the essential facts constituting the DEA agents' probable cause. *United States v. Manley*, 632 F.2d 978, 985 (2d Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). This is not the case here. The probable cause requirement was satisfied by Agent Castillo's first hand information and did not rely on Dennis' knowledge. Therefore, it is not necessary that Dennis be produced now. Dennis, however, was a moving party in the negotiations between the DEA agent and the defendants. Defendants' entrapment defense hinges on the testimony of Dennis. When, "Doe [the informant] had helped set up the criminal occurrence and had played a prominent part in it . . . [and] . . . testimony might have disclosed an entrapment . . . .", *Roviaro v. United States*, 353 U.S. 53, 64, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957), the informant must be produced to ensure a fair trial. *Id.* As in *Roviaro*, Dennis is the "only witness in a position to amplify or contradict the testimony of government witnesses." *Id.*

A resolution of this problem, of course, must await trial in order for me to ascertain whether the defense of entrapment will in fact be raised.

#### IV. *Severance*

■ Defendant Rubio contends that any reference to her in her husband's post 'arrest statements, which I have just determined are admissible, will cause her prejudice and thus warrant severance. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The government has agreed to avoid all references to Rubio in the presentation of the Rosado statements

---

**5.** "In addition, of course, the determination of United States Magistrate Kent Sinclair was entitled to weight . . . ." *United States v. Dunloy*, 584 F.2d at 10 n.3.

on their direct case. This resolves any potential *Bruton* problems.

## V. Bail

 The bail for Rubio and Rosado has remained at $50,000 each since the date of their arrest on June 6, 1981. Both defendants seek reduction of bail, with Rubio suggesting $5,000 as an appropriate amount. This is the first criminal charge against either Rubio or Rosado. This fact, however, must be balanced against the government's interest in ensuring the defendants' appearance at trial. *United States v. Accardi*, 241 F.Supp. 119 (S.D.N.Y.1964), *cert. denied*, 382 U.S. 954, 86 S.Ct. 426, 15 L.Ed.2d 359 (1965). False documents and passports which would facilitate international travel were found in the defendants' apartment. Defendants also reported to Agent Castillo various trips to South America. It is therefore necessary to maintain current bail to ensure the defendants' continued presence in the Southern District.

In sum, defendants' motions to suppress evidence obtained pursuant to search warrants 81–787, 81–764, 81–779 and 81–788 are denied; defendant Rosado's motions to suppress his post arrest statements to DEA agents and AUSA Romatowski are denied; defendants' motion for disclosure of the informant is postponed until and if there is a trial; defendant Rubio's motion for a separate trial is denied; and defendants' motion to reduce bail is denied.

SO ORDERED.