UNITED STATES of America, Plaintiff,

v.

Gabriel ZANCHE and Lewis
Stanton, Defendants.

No. CR–81–99.

United States District Court,
W. D. New York.

April 16, 1982.
On Motion to Reconsider June 9, 1982.

Roger P. Williams, Salvatore R. Martoche, U. S. Attys., Rochester, N. Y. (David Rothenberg, Asst. U. S. Atty., Rochester, N. Y., of counsel), for U. S.

Palmiere & Pellegrino, Rochester, N. Y. (Norman A. Palmiere, Rochester, N. Y., of counsel), for defendant Zanche.

Affronti, Jesserer, Andolina & Lamb, Rochester, N. Y. (Lawrence J. Andolina, Rochester, N. Y., of counsel), for defendant Stanton.

CURTIN, Chief Judge.

The government has charged defendants in this action with conspiracy to defraud and steal property from the United States Postal Service. Defendants Gabriel Zanche and Lewis Stanton, owner and employee of Gabriel Service and Supply Corporation [Gabriel's], respectively, move to suppress all the evidence seized pursuant to a search warrant issued by the late Honorable Harold P. Burke. They claim the warrant was defective because it failed to describe the items to be seized with the particularity demanded by the Fourth Amendment to the United States Constitution.

## FACTS

Beginning in 1980, United States Postal Inspector Thomas M. Lensing conducted an investigation of the activities of the postmaster and postal service employees of the East Rochester Postal Service Office. His investigation also encompassed employees of Gabriel's, a mail order company located at 233 West Commercial Street in East Rochester, New York. Based on the information he acquired, Lensing had reason to believe there was a possible scheme between employees of Gabriel's and the East Rochester Postal Service Office to defraud the Postal Service of money due it for postage.

In an affidavit in support of a search warrant, Lensing spelled out in great detail how he came to learn of the alleged scheme between Gabriel's and the East Rochester Postal Service. During his investigation, Inspector Lensing questioned Virginia MacConnell, a 14-year employee with Gabriel's. Mrs. MacConnell told him that other Gabriel's employees were falsifying postal documents relating to the volume of their mail, thereby paying substantially less for postage than they should have for the 175,000 pieces of mail Gabriel's distributed every four to six weeks. She also informed Lensing that she had been told that employees at the post office were cooperating with Gabriel's by allowing actual mailings without prior payments.

Based upon Mrs. MacConnell's information, the postal investigators set up surveillance of both the East Rochester Post Office and Gabriel's to monitor Gabriel's next large-scale mailing, scheduled for May 13, 1980. On that date, Postal Inspector James Cox observed 42 sacks of mail being unloaded from a Gabriel's truck onto the postal dock at the East Rochester Post Office. Forty-five minutes later, the sacks were reloaded onto a postal truck without first being weighed or apparently counted. This scenario was repeated with Gabriel's mail on May 15, May 16, and May 19. Inspector Lensing noted that this method of mail handling was contrary to postal regulations, which require that each mailing's weight be verified to assess the proper postage.

To corroborate their suspicions further, the postal inspectors implemented a system to weigh, photograph, and record all of Gabriel's third-class bulk mailings to deter-

mine the correct postage between May 19 and June 12, 1980. Postal inspectors discovered that the postage which should have been paid for Gabriel's mailings during this period was $5,360.99 more than the amount Gabriel's was actually charged.

In his affidavit, Inspector Lensing also described the two buildings where, according to Mrs. MacConnell, Gabriel's business records were stored. He reported that the building located at 233 West Commercial Street was a gray, two-story wood structure. The other building was described as a one-story cement block building located at 242 West Commercial Street.

Finally, Inspector Lensing stated that Mrs. MacConnell described several types of business records maintained by Gabriel's. He listed nine categories of these business records which, he asserted, were needed as evidence of the scheme to defraud the Postal Service of postage in the manner described in his affidavit.

Relying on Inspector Lensing's statements, Judge Burke issued a warrant authorizing a search of the buildings at 233 and 242 West Commercial Streets. The warrant specified the following items to be seized:

... any and all business records relating to present and past disbursements and payments made by Gabriel's Services and Supply Corp. including: (1) cancelled checks and bank statements; (2) records of accounts payable; (3) cash disbursements journals; (4) computer printouts reflecting payments and accounts payable; (5) day books and day journals; (6) documents indicating the amounts paid for printing and mailing of mail order catalogs; (7) past mail order catalogs distributed by Gabriel's Service and Supply Corp. and (8) all records indicating disbursements made by Gabriel's Service and Supply Corp.; (9) all records relating to mailing including postal service receipts, 3rd class mailing permits and trust fund accounts with the postal service ....

According to defendants, 20 or more postal inspectors executed the search warrant on June 24, 1980. Defendants allege that the agents seized, *inter alia*, numerous documents and records which were not delineated in the warrant or affidavit, including computer lists of customers and potential customers, business letters, mailing labels, monthly financial statements and balance sheets, four boxes of corporate bank statements, blank corporate checks, disbursement journals, check stubs, and interoffice memoranda. Defendants also allege that agents searched and seized records from 237 West Commercial Street, which was not authorized in the warrant.

DISCUSSION

██ It is elementary that general warrants which permit the wholesale rummaging through a person's belongings are prohibited by the Fourth Amendment. *Lo-Ji Sales v. New York*, 442 U.S. 319, 325, 99 S.Ct. 2319, 2323, 60 L.Ed.2d 920 (1979); *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). A warrant must be sufficiently particular that nothing is left to the discretion of the agents executing the warrant. *Andresen v. Maryland, supra.* Applying these broad principles, defendants assert that the warrant is tantamount to the type of general warrant the Constitution condemns.

██ Viewed in a vacuum, the catalog of records to be seized might suggest the fishing expedition implied by the defendants. However, the warrant must be read in a "commonsense" fashion, *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), and should not be examined apart from the affidavit underlying the warrant. *See In Re Search Warrant Dated July 4, 1977, Etc.*, 572 F.2d 321, 323–24 (D.C.Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978).

██ The specified business records, though described in somewhat categorical terms, were not randomly chosen. Based on Mrs. MacConnell's information, Inspector Lensing knew Gabriel's kept these types of records. Having worked on more than 100 internal theft investigations, he had

good reason to presume the documents he listed were essential evidence of the suspected fraud.

Although the existence of the fraud operation was confirmed by extensive surveillance, the scope, number of individual and other business participants, time period, and amount of the fraud remained unknown. The business records sought by Lensing, all of which related to "past and present disbursements and payments," were needed to uncover this information. Under these particular circumstances, the list of business records to be seized was neither haphazard nor overly broad.

■ Other aspects of the warrant merit some discussion as well. That the list was one of types of records rather than individually titled documents does not render the warrant constitutionally unsound. Unlike other forms of property, business records are often incapable of being itemized one by one, particularly when their existence, but not their precise names or quantity, is all that is known. Notwithstanding the requirement of particularity, enumeration of each individual paper is not a burden imposed by the Fourth Amendment, regardless of the circumstances. *See Andresen v. Maryland, supra,* 427 U.S. at 478–84, 96 S.Ct. at 2747–2750; *National City Trading Corp. v. United States,* 635 F.2d 1020, 1026 (2d Cir. 1980). Likewise, the fact that an exceedingly large number of documents were encompassed by the list does not invalidate the warrant. *United States v. Nilsen,* 482 F.Supp. 1335, 1341 (D.N.J.1980). To the contrary of both these arguments, the warrant was sufficiently "[s]pecific in its terms, . . . [and] provided the Government agents executing it with firm parameters as to what could lawfully be seized." *Id. See National City Trading Corp. v. United States, supra* at 1026; *Matter of Designer Sportswear, Inc.,* 521 F.Supp. 434, 436–37 (S.D.N.Y.1981).

■ Defendants insist nonetheless that the failure of the warrant to circumscribe the dates of the records to be seized waters down whatever particularity otherwise exists to the point of total dilution. While I do not agree that a limited time frame will never be called for, *see, e.g., United States v. Abrams,* 615 F.2d 541, 545 (1st Cir. 1980), it must be observed that courts in this circuit have approved warrants for business records unrestricted by time limitations. *See National City Trading Corp. v. United States, supra* at 1021; *Matter of Designer Sportswear, Inc., supra* at 435; *United States v. Auterbridge,* 375 F.Supp. 418 (S.D. N.Y.1974). More importantly, as the government points out, if the fraud operation under investigation was ongoing, evidence of illegal activity in the past would be relevant to the conspiracy, while records of legitimate transactions prior to the conspiracy will help determine how and when the fraud scheme began.

I am mindful that special considerations arise with respect to the Fourth Amendment's particularity mandate in the context of business record seizures. *See discussion, United States v. Abrams, supra* at 548–50 (concurring opinion). Many of these concerns were addressed in the trilogy of recent First Circuit opinions relied on by defendants, where the court found the warrants for the seizure of business records were unconstitutionally general. *See United States v. Abrams, supra; United States v. Roche,* 614 F.2d 6 (1st Cir. 1980); *Application of Lafayette Academy,* 610 F.2d 1 (1st Cir. 1979); *but cf. United States v. Brien,* 617 F.2d 299, 309 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980) (where there is probable cause that pervasive fraud scheme existed, all the business records of a business may be seized if accurately described).

■ While the particular warrant and the surrounding circumstances in each of those cases is perhaps factually distinguishable from the warrant in this action, the point is well taken that a careful balance must be struck between the need for particularity and the need for the known documents in business record seizure situations. Even so, this circuit and others have upheld warrants which facially as well as contextually are no more particular than the warrant challenged here. *National City Trad-*

*ing Corp. v. United States, supra* at 1026–27; *United States v. Scherer*, 523 F.2d 371 (7th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976); *Shaffer v. Wilson*, 523 F.2d 175 (10th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976); *United States v. Fuller*, 441 F.2d 755 (4th Cir.); *cert. denied*, 404 U.S. 830, 92 S.Ct. 73, 30 L.Ed.2d 59 (1971); *see also Matter of Designer Sportswear, Inc., supra.* In light of all the circumstances, I am satisfied that the search warrant in this particular action was constitutionally valid.

▮ Defendants allude in their motion to suppress that the search itself may have been constitutionally impermissible because agents entered and seized records from a building not specified in either the warrant or affidavit and because they seized documents outside the scope of the warrant. These questions cannot be answered without an evidentiary hearing. When the government makes known what evidence seized pursuant to the warrant it intends to introduce as evidence, a suppression hearing will be scheduled. In any event, the illegal seizure of items outside the scope of a lawful warrant does not invalidate the entire search and seizure. *National City Trading Corp. v. United States, supra* at 1026; *Matter of Designer Sportswear, Inc., supra* at 437.

Accordingly, defendants' motion to suppress the evidence seized pursuant to the search warrant in this case is denied.

So ordered.

## ON MOTION TO RECONSIDER

This is defendants' motion to reconsider my decision and order of April 16, 1982, denying their motion to suppress business records seized pursuant to a search warrant. As their chief contention, defendants claimed the search was authorized by a constitutionally proscribed general warrant. They now insist that my earlier decision misconstrued both the gravamen of their argument and the applicable law.

I have carefully reviewed my prior opinion, the relevant cases, and the parties' briefs, and I am satisfied there is no basis to reverse the prior decision. For the sake of clarifying certain issues raised by defendants, however, I will address their major points briefly. Because the facts were recited extensively in the first order, there is no need to repeat them here.

Initially, defendants believe I overlooked the main reason the warrant was a general one, perhaps because I concentrated on the degree of particularity with which the items to be seized were described. They prefer to zero in on the warrant's lack of identification of or reference to the concrete criminal activities under investigation for which the warrant was secured and the business records were seized. As defendants correctly note, the warrant alludes only to "violations of 18 U.S.C. § 371," the general federal conspiracy statute. The absence of any reference to a more specific crime, they maintain, renders the warrant a general one, at odds with the dictates of the Fourth Amendment to the United States Constitution.

Defendants' analysis is without foundation. The constitutional doctrine that proscribes general warrants proceeds directly from the particularity language of the Fourth Amendment, which demands that a warrant "particularly [describe] the place to be searched and the persons or things to be seized." After elaborating upon the historical background of the amendment, the United States Supreme Court in *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), affirmed:

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Id.* at 196, 48 S.Ct. at 76. *See Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976).

■ This is the essence of the function of the Fourth Amendment. There is no constitutional requirement that in addition to particularly describing the place to be searched and the persons or things to be seized, a warrant must also particularly articulate the specific criminal conduct under scrutiny. This is not to say that a warrant's denotation of a specific crime cannot be considered in ascertaining whether the warrant as a whole has survived the Fourth Amendment's particularity test. *See, e.g., United States v. Timpani*, 665 F.2d 1, 5 (1st Cir. 1981). But, permitting a warrant's mention of a specific crime to be taken into account is a far different matter than mandating its inclusion. Defendants' argument to the contrary is not supported by the Fourth Amendment, it is underlying philosophy, or applicable case law.[1]

In the instant case, the warrant's list of items to be seized was precise, limited, and as detailed as possible under the circumstances. *See National City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980); *United States v. Timpani, supra* at 5; *Matter of Designer Sportswear, Inc.*, 521 F.Supp. 434, 436–37 (S.D.N.Y.1981). There were no open-ended, catch-all phrases, such as, "consisting of but not limited to . . .," *United States v. Roche*, 614 F.2d 6, 7 (1st Cir. 1980); or, "other fruits, instrumentalities, and evidence of crimes at this [time] unknown," *Andresen v. Maryland, supra*, 427 U.S. at 479, 96 S.Ct. at 2748, or, "other records, documents and papers," *United States v. Rubio*, 526 F.Supp. 171, 176

(S.D.N.Y.1981), which, if not otherwise delimited, might have given the agents *carte blanche* to seize any and all records they wished. There is simply no indication that the mission of the executing agents was inadequately circumscribed due to the warrant's lack of a reference to a substantive crime despite its particular descriptions of the places to be searched and the items to be seized. Consequently, unlike the warrants in the cases relied on by defendants, whether the warrant in this case referred to specific, concrete criminal activity has no bearing on whether the warrant was constitutionally limited.[2]

Defendants also take issue with the court's ruling in a collateral matter. Disagreeing with the general statement that a warrant "should not be examined apart from the affidavit underlying the warrant," Order, p.5, they insist I erred by looking to the underlying affidavit when I evaluated the particularity of the warrant's description of the items to be seized. According to defendants, the predicate affidavit can be considered in assessing the particularity of a warrant's description only when it is expressly referred to in and attached to the warrant itself. *See Application of Lafayette Academy, Inc.*, 610 F.2d 1, 4 (1st Cir. 1979); *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976).

■ The short answer to defendants' assertion is that while I do not necessarily argue with defendants' legal conclusion, I did not disregard that rule in the manner they suggest. A close reading of my prior

1. Though not for the purpose defendants urge, a description of the suspected activity plays a critical role in the issuance of a warrant by establishing the prerequisite probable cause. Defendants here concede that the warrant's underlying affidavit demonstrated the requisite probable cause that a crime was committed by them. Defendants' Motion to Reargue, ¶ 10.

2. The triad of First Circuit cases defendants cite does not stand for the proposition that a warrant must include a reference to the particular activity under investigation, as they insist. The warrants in *United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980); *United States v. Roche*, 614 F.2d 6 (1st Cir. 1980); and *Application of Lafayette Academy, Inc.*, 610 F.2d 1 (1st Cir. 1979), were invalid not because they did

not contain specific descriptions of the crimes under investigation but because the descriptions of records to be seized were overly general and unnecessarily unbounded under the particular circumstances of each situation. The criminal statutes cited by each warrant encompassed criminal activity which itself was far too unspecific and overly inclusive to further limit the warrant's scope. Thus, unlike the criminal activity denoted in the warrant in *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976), the warrant's reference to criminal statutes in each of these three cases could not salvage its otherwise oversweeping description of the records to be seized.

order reveals that the discussion of the affidavit was intended to demonstrate that there were adequate grounds to seize all the records which were enumerated in the warrant. Had the description of the items to be seized exceeded the scope of suspected criminal activity giving rise to the requisite probable cause, the warrant might well have been unconstitutionally overbroad. *National City Trading Corp. v. United States, supra* at 1026; *United States v. Brien,* 617 F.2d 299, 309 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); *United States v. Rubio, supra* at 175–76; *Matter of Designer Sportswear Inc., supra* at 436–37. Examining the warrant in the context of the affidavit was entirely proper for this purpose.

■ It was also proper to examine the affidavit in deciding the degree of specificity required in the warrant. *United States v. Timpani, supra* at 5; *United States v. Morisse,* 660 F.2d 132, 136 (5th Cir. 1981); *United States v. Rubio, supra* at 176. Taking the affidavit into account for this reason is plainly distinguishable from substituting the specificity present in an affidavit for the lack of specificity in a warrant.

Conversely, my earlier decision neither relied on the underlying affidavit to justify any vagueness or imprecision in the way the items to be seized were described, nor turned to the affidavit in an attempt to infuse the warrant with constitutionally imposed restrictions. As I found at pages 210–211, the warrant by its own terms adequately described and delineated the records to be seized under the circumstances.[3] The executing agents' only task was to locate and collect the records spelled out in the warrant. The warrant left the agents no room to decide for themselves whether any other types of books, memoranda, documents, or other items not fitting within the bounds of the nine particularized categories

of records should have been confiscated as well. Accordingly, the description of items to be seized in and of itself fully satisfied constitutional requirements. The issue of whether the warrant's reference to a crime further limited the warrant's scope was therefore unnecessary to reach.

Defendants' motion to reconsider the court's prior order and to suppress the business records seized pursuant to the search warrant is denied.

So ordered.

---

3. Despite defendants' protests, there is no logical reason not to read a warrant in a "common-sense and realistic fashion" even though *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), speaks directly only to affidavits. *See National City Trading Corp. v. United States,* 635 F.2d 1020, 1027 (2d Cir. 1980); *United States v. Rubio,* 526 F.Supp. 171, 176 (S.D.N.Y.1981). For a discussion of this point, *see United States v. Abrams,* 615 F.2d 541, 550 (1st Cir. 1980) (J. Campbell, concurring).