UNITED STATES of America, Appellee,

v.

Concepcion RUBIO, a/k/a "Carol Rubio," and Richard Rosado, Defendants-Appellants.

Nos. 178, 179, Dockets 82–1162, 82–1164.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1982.

Decided May 24, 1983.

See also D.C., 526 F.Supp. 171.

Henry Putzel, III, New York City, for defendant-appellant Rubio.

Gerald J. McMahon, New York City, for defendant-appellant Rosado.

Lesley Oelsner, Asst. U.S. Atty., S.D. N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Gerard E. Lynch, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before MESKILL, PIERCE and FAIR-CHILD *, Circuit Judges.

---

* The Honorable Thomas E. Fairchild of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

PIERCE, Circuit Judge:

## I. BACKGROUND

On June 5, 1981, Drug Enforcement Administration (DEA) informant Dennis Collazo twice telephoned Concepcion Rubio, a/k/a Carol Rubio, to arrange a meeting between her and Richard Rosado, prospective narcotics buyers, and DEA Special Agent Celerino Castillo, who was posing as a Mexican narcotics seller named "Fernando Cordoba." Unknown to Rubio, the telephone calls originated from DEA headquarters and, with Collazo's consent, were being tape-recorded by Special Agent Castillo. During the course of the telephone conversations, Collazo informed Rubio that "his man" (Cordoba) was arriving that evening from Dallas and wanted to know if Rubio and Rosado were "for real." Rubio assured the informant that "if it's good, and the price is decent, yes." A meeting to discuss a possible sale was arranged for that evening at a lounge in the Holiday Inn on West 57th Street in Manhattan.

The meeting was held as planned. Castillo was introduced as "Cordoba" and the parties discussed terms for a cocaine transaction. Rubio and Rosado agreed to purchase two kilograms of cocaine for $100,000, telling Cordoba that they needed the drugs because their "South American connection" for cocaine had just been arrested; that they had customers waiting; and that on several occasions, they had used a scheme of rotating duplicate United States passports to conceal their frequent trips to Ecuador where they bought cocaine and smuggled it into this country. When Cordoba inquired whether raising $100,000 would be a problem, Rosado assured him that "money [was] no object;" he stated that he and his wife (Rubio) had been in the business for a long time, and that they had cocaine money in various safe deposit boxes around New York City. Arrangements were made to exchange the drugs and money the next day at the same Holiday Inn.

On June 6, 1981, Rubio and Rosado arrived at the Holiday Inn at approximately 12:30 p.m., and met Collazo and Cordoba in the lounge area. Rubio was carrying a purse and a plastic bag. The bag, she revealed to Cordoba, contained a triple beam scale, a device often used by narcotics traffickers to measure cocaine in grams; and also a bottle of Clorox bleach, often used to test cocaine.[1] Rubio and Rosado were arrested by DEA agents when they left the lounge enroute to Cordoba's room.

The agents searched the appellants and found a loaded .38 caliber revolver, an alkaloid kit for testing cocaine and $178 in currency in Rubio's purse. They found $778 in currency and two packets of heroin on Rosado's person. At the time of the arrests, Rosado was then carrying the plastic bag containing the scale and the bottle of Clorox. In the car which the appellants drove to the Holiday Inn, the agents found a safe-deposit box key and a blue canvas bag in which, after obtaining a search warrant, they found $48,810 in currency.

After being informed of his constitutional rights, Rosado was brought to DEA headquarters on 57th Street in Manhattan for processing and questioning. When asked about the purpose of being at the Holiday Inn, Rosado replied that he was there for a weekend vacation with his wife. When asked about the triple beam scale and the bottle of Clorox, Rosado said that his wife was planning to do some cooking and cleaning over the weekend at the hotel. When confronted with the heroin packets taken from his person, Rosado denied having had them in his possession.

The initial detention of appellants at the Holiday Inn occurred on Saturday, June 6, at approximately 1:30 p.m. The initial questioning and processing at DEA headquarters was concluded that day by 3:00 p.m., whereupon Rubio and Rosado were driven to the Metropolitan Correctional

---

1. Special Agent Castillo testified at trial that a triple beam scale was a "very precise" instrument of measurement used by narcotics traffickers to weigh cocaine in grams. The agent also testified that the use of Clorox bleach was "an old method" of testing the purity of cocaine.

Center (MCC), where they were confined to await arraignment on Monday, June 8—which occurred at 2:15 p.m. Thus, Rubio and Rosado were in custody two full days from arrest to arraignment.[2]

Rosado was interrogated while in custody twice prior to his arraignment: first at the time of arrest and processing on Saturday, June 6, and again on Monday, June 8, at 11:45 a.m., at which time Rosado was questioned for approximately 30 minutes by an Assistant United States Attorney. Rubio was questioned once during that same period, at the time of arrest and processing on Saturday.

Initially, defendants were charged in an indictment filed on June 16, 1981. On November 5, 1981, a four count superseding indictment was filed: Count One charged defendants with conspiracy to distribute and possess with intent to distribute narcotics, and to import narcotics into the United States, namely cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 952 and 960 (1976); Count Two charged Rosado with possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A);[3] Count Three charged Rubio with possession of a firearm during the commission of the conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(2) (1976); Count Four charged Rosado with making a false statement in applying for a United States passport in violation of 18 U.S.C. § 1542 (1976).

On December 1, 1981, approximately two weeks prior to appellants' first trial,[4] the informant Collazo revealed to Agent Castillo that he had been arrested more than once and implied that, due to the arrests, he would never be able to return to Puerto Rico. The agent became suspicious and investigated Collazo's criminal record. Castillo discovered that not only had Collazo been arrested at least four times in Puerto Rico and the United States, but that he was an escaped prisoner from Puerto Rico with a warrant outstanding for his arrest.[5] Collazo was immediately arrested by Agent Castillo.

The initial prosecution having ended in a mistrial due to a jury deadlock, the case was retried before Judge Sprizzo and a jury. At the second trial, appellants argued that they were entrapped by Collazo and were thus induced to engage in the acts charged in the indictment. The trial judge instructed the jury that entrapment occurs when "the criminal conduct of the defendant is the product of the activity of government agents, that is, when the agents initi-

2. Arraignments on Saturdays in the United States District Court for the Southern District of New York generally occur before a United States Magistrate until noon. Arraignments do not occur again until 10:00 a.m. Monday. S.D. N.Y. Rule 3 (R.Div.Bus.Dist.J.).

3. The original indictment, filed June 16, 1981, charged defendant Rosado in Count Two with possession with intent to distribute a quantity of heroin, in violation of Title 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). At the close of the government's case, the charge was modified to simple possession.

4. Trial of Rubio and Rosado began on December 17, 1981, before Kevin T. Duffy, District Judge, and a jury. The trial ended in a mistrial on January 12, 1982, when the jury was unable to reach a verdict. Judge Duffy also conducted the September 21, 1981 hearing on appellants' pre-trial motions. Appellants' second trial was held before Judge Sprizzo, who considered himself bound by Judge Duffy's rulings on the pre-trial motions.

5. The government entered into a stipulation which documented Collazo's criminal record. The substance of that stipulation is as follows: In 1973, Collazo was arrested in Puerto Rico for the crime of bigamy. That same year, he stole a sum of money from an employer in Puerto Rico and fled to Miami, Florida, where he was arrested on April 3, 1973, and charged with interstate transportation of stolen property. Collazo was prosecuted in Puerto Rico for the above federal charge and on local charges of abuse of trust. While free on bail, Collazo fled to the United States. He was rearrested in New Haven, Connecticut, on November 21, 1973, and returned to Puerto Rico for sentencing. Collazo was sentenced in 1974 but escaped from confinement after serving two years of a seven to nine year sentence. In July 1977, he was arrested in Houston, Texas, for unlawful flight to avoid confinement and was returned to Puerto Rico. In November 1977, Collazo again escaped from a Puerto Rico prison and remained at large until he was arrested by Agent Castillo on December 1, 1981.

ate, induce, persuade or lure a person to commit a crime who would not otherwise have committed the crimes alleged." After charging the jury, but prior to the commencement of deliberations, the district judge conferred with counsel to hear any objections to the charge. The government's attorney asked the judge to clarify that portion of his charge in which he had stated that "the government may not prosecute for offenses which it has created and in which it has participated." Counsel for the government was concerned that the word "participated" was ambiguous and could be construed by the jury to mean that the use of an informant was, in and of itself, an improper participation in the crime. Over defense counsel's objection, the court gave the following clarifying instruction on entrapment:

> Now, with respect to the entrapment charge. I made reference to the fact that the Government may not prosecute for offenses which it has created and in which it has participated. However, in using the word "participation" in that aspect of the charge, I did not mean to include within that type of unlawful participation the Government's use of an undercover agent who is playing a role or purporting or pretending to be playing a role.
>
> That is not the kind of participation which I meant when I talked about the Government not being able to prosecute for crimes which it has created and in which it has participated.
>
> As I told you, the use of informants is lawful and it is perfectly proper for the Government to give a defendant who is otherwise predisposed to commit an offense an opportunity to do so.

Rosado was thereafter convicted on Counts One, Two and Four (conspiracy, possession and false statement). Rubio was

convicted of Counts One and Three (conspiracy and carrying a firearm).[6]

Numerous claims of error are raised on appeal. Each appellant claims that: (1) the court's clarifying charge on entrapment effectively precluded proper consideration of that defense by the jury; and (2) the court erred in not dismissing the indictment because of alleged misconduct by the government in dealing with the informant Collazo. In addition, Rosado challenges the denial of his motion to suppress certain post-arrest statements made during the two-day pre-arraignment delay, and Rubio claims that the court erred by failing to suppress certain post-arrest statements made by Rosado which she contends prejudiced her defense. Additional claims of error are raised which are meritless. For the reasons set forth below, we affirm the judgment of the district court in its entirety.

## II. DISCUSSION

### A. Entrapment—the Clarifying Instructions

◼ Appellants contend that the district court's clarifying charge on entrapment erroneously precluded the jury from considering whether the appellants were improperly induced to commit the acts charged as crimes by the activities of an unsupervised informant. The clarifying charge had the effect, they contend, of "direct[ing] the jury that it should find the government's participation in the crime through the informant Collazo to have been proper and [thus did] not . . . constitute improper inducement to commit the offense." We disagree.

In *United States v. Braver,* 450 F.2d 799, 805 (2d Cir.1971), *cert. denied,* 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972), the defendants therein argued that the segment of the trial judge's entrapment charge which explained the necessity of the government using undercover agents and informants, in effect, removed the factual

---

**6.** On April 28, 1982, Judge Sprizzo sentenced Rubio to five years' imprisonment on Count One, suspended imposition of sentence on Count Three and placed Rubio on probation for a five year period to begin upon her release from prison. He sentenced Rosado to five years' imprisonment on Count One, and one year of imprisonment on Count Two, to run concurrently, and suspended imposition on Count Four and placed Rosado on probation for five years to commence upon his release from prison.

question of entrapment from the jury. This court declined to credit that argument then and we decline to do so now.

In both *Braver* and the instant case, the instruction given merely conveyed to the jury the law of this circuit that the use of undercover agents and informers is not an unlawful practice and should not distract its attention from the two factual questions which it must decide: "(1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence." *United States v. Sherman,* 200 F.2d 880, 882 (2d Cir.1952); *see also United States v. Barnes,* 604 F.2d 121, 160 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Steinberg,* 551 F.2d 510, 513–14 (2d Cir.1977).

Moreover, as this court held in *United States v. Valencia,* 645 F.2d 1158, 1166 (2d Cir.1980), "[t]o the extent that there is any arguable confusion in [the court's clarifying] charge, it is insignificant when the entire charge is read in context." Here, the trial judge was careful to relate his clarifying instruction to the main charge, which had been given only minutes earlier. We find that the jury charge, taken as a whole, properly stated the law of this circuit with respect to entrapment, and did not preclude consideration of claimed improper inducement, *see Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

### B. *Governmental Misconduct*

On December 2, 1981, one day after arrest of the informant Collazo by Agent Castillo, Rosado made an oral motion at a hearing before Judge Duffy to dismiss the indictment. The motion was based on alleged misconduct by the government in utilizing and paying an escaped convict to serve as an informant in conjunction with the activities of appellants. In a letter dated December 10, 1981, Assistant United States Attorney Romatowski alerted defense counsel and the court that he had just learned that an unnamed DEA agent had contacted the prosecutor for the Commonwealth of Puerto Rico, and allegedly sought leniency on Collazo's behalf. In the same letter, Romatowski assured the court that his office had contacted the DEA agent in question and directed that "no [further] steps be taken to intervene with any law enforcement authorities on Mr. Collazo's behalf." In a December 14, 1981 memorandum of law in support of his December 2 motion to dismiss, Rosado cited the above two bases—*i.e.,* the government's use of an escaped convict as an informant and its subsequent pleas for leniency—as improper conduct on the government's part which required dismissal of the indictment. Rosado also contended that the government's communication seeking leniency constituted improper "tampering" with a potential witness. In its responding memorandum of law, the government denied misconduct and assured the court that steps had been taken to ensure that "similar lapses do not occur in the future." After the judge reviewed these communications, he denied the relief sought, and the trial commenced on December 17, 1981.

The first trial ended in a mistrial. Thereafter, Rosado renewed his motion for dismissal of the indictment at his second trial when the government disclosed that still additional indiscretions had occurred. In particular, it was revealed that the aforementioned DEA agent, as well as an Assistant United States Attorney, both from another district, had written letters to the prosecutor in Puerto Rico on January 6, and February 3, 1982, respectively.[7] These letters informed that prosecutor that Collazo had assisted their particular offices in a major investigation and had made possible infiltration of a large heroin trafficking organization. Assistant United States Attorney Oelsner informed the court that her office did not authorize the pleas for lenien-

---

7. The trial judge made an oral ruling that the names and locations of the DEA agent and the Assistant United States Attorney who contacted the prosecutor in Puerto Rico be omitted from the record in order to preserve the integrity of an on-going investigation.

cy, and had no prior knowledge that the aforesaid two individuals would contact the Puerto Rico authorities about Collazo. The district judge denied the motion, having concluded that these acts do not "rise . . . to the level of the type of constitutional infirmity which would require the dismissal of the indictment." We agree.

It is well established that dismissal of an indictment on grounds of governmental misconduct is an "extreme" and "drastic" sanction that is justified only when it is necessary either (1) to eliminate unfair prejudice to a defendant, or (2) to "help to translate the assurances of the United States Attorneys into consistent performances by their assistants." *United States v. Fields,* 592 F.2d 638, 647–48 (2d Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *see also United States v. Artuso,* 618 F.2d 192, 196–97 (2d Cir.), *cert. denied,* 449 U.S. 879, 101 S.Ct. 226, 66 L.Ed.2d 102 (1980). The incidents involving Collazo demonstrated neither need and, hence, did not warrant the extreme sanction of dismissal.

The district court heard the sworn testimony of Agent Castillo that he and his associates were unaware of Collazo's fugitive status. After hearing argument, the district court denied appellant's motion to dismiss the indictment on this ground. Based upon the sworn testimony of the DEA agents concerning their prior efforts to search the National Crime Information Computers in order to investigate Collazo's criminal record, the judge's decision was not clearly erroneous. Further, at the trial before Judge Sprizzo, the defendants were allowed to cross examine the DEA agents regarding their misadventures with the informant. Hence, the jury was enabled to examine this evidence and assess the credibility of the government's witnesses and to draw their own conclusions as to the government's knowledge of Collazo's fugitive status and the degree of supervision afforded the informant.

Finally, we reject appellants' charges of misconduct relating to communications made on behalf of Collazo by government agency representatives who had no relationship to this case. On these facts, we decline to hold the United States Attorneys' office responsible for the actions of those not under its control, and about which it had no prior knowledge.

### C. Post Arrest Statements

Appellant Rosado claims that Judge Duffy, who presided at appellants' pre-trial suppression hearing, erred in not suppressing certain statements that he made to DEA agents on June 6, 1981, and statements made to Assistant United States Attorney Romatowski on June 8, 1981. *See United States v. Rubio,* 526 F.Supp. 171 (S.D.N.Y.1981). Specifically, Rosado contends that with regard to the June 6 statements, the government failed to establish that he had knowingly and intelligently waived his right to remain silent under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This claim arises from the fact that the agent who testified that he gave the *Miranda* warnings to Rosado on June 6th, when questioned at the suppression hearing, failed to remember if Rosado stated that he understood the *Miranda* warnings. Rosado also contends that his June 8 statements, which preceded his arraignment by about three and one half hours, were inadmissible as the product of an unreasonable pre-arraignment delay. We do not agree with either contention, and therefore, we affirm the findings of the court below.

While it is true that the government has the burden of demonstrating that a defendant has knowingly waived his Fifth and Sixth Amendment rights, *Miranda v. Arizona,* 384 U.S. at 475, 86 S.Ct. at 1628, both the Supreme Court and this circuit have recognized that an express statement by the defendant is not necessary to establish such a waiver. *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *United States v. Boston,* 508 F.2d 1171 (2d Cir.1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975). As the Supreme Court stated in *Butler,* "in at least some cases waiver can be clearly inferred from the actions and

words of the person interrogated." 441 U.S. at 373, 99 S.Ct. at 1757. Here, with reference to the June 6th statements, the district judge found that Rosado had waived his *Miranda* rights despite the agent's inability to recall whether Rosado stated he understood the warnings. The judge stated:

> At the hearing, Rosado impressed me as a man well capable of understanding his rights and asserting them. Far from being the pliant victim which he asserts in his moving papers, it is clear that he understands his rights and was in full command of his faculties when he made the statements which he now seeks to suppress.

526 F.Supp. at 174. Also, the district judge found that there was no credible evidence that "Rosado was coerced into making any statements through physical or mental abuse," or that he was "subjected to protracted interrogation." *Id.* The district judge found that Rosado had voluntarily waived his right to remain silent; this was supported by his evaluation of the actions and words of the accused, and was not clearly erroneous.[8] *See United States v. Isom,* 588 F.2d 858, 862 (2d Cir.1978); *United States v. Burgos,* 579 F.2d 747, 750 (2d Cir.1978); *United States v. Boston,* 508 F.2d at 1175.

■] Appellant's argument concerning the June 8 statements presents a different issue. Rosado contends that his statements to the Assistant United States Attorney, given two days after his arrest, should have been suppressed because of an unreasonable weekend pre-arraignment delay which is proscribed by Fed.R.Crim.P. 5(a) and 18 U.S.C. § 3501(c) (1976). We agree with Judge Duffy's finding that there was no purposeful postponement of arraignment, and no lengthy, hostile, or coercive interrogation which caused the appellant prejudice. Therefore, we affirm the judge's denial of the motion to suppress the June 8 statements.

This court has recognized that a lapse of hours between arrest and arraignment,

standing alone, does not require the exclusion of a statement made during the period. *See, e.g., United States v. Isom,* 588 F.2d at 862; *United States v. Burgos,* 579 F.2d at 750; *United States v. Collins,* 462 F.2d 792, 795–96 (2d Cir.), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972); *United States v. Marrero,* 450 F.2d 373, 376–78 (2d Cir.1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972); *United States v. Price,* 345 F.2d 256, 261–62 (2d Cir.), *cert. denied,* 382 U.S. 949, 86 S.Ct. 404, 15 L.Ed.2d 357 (1965). In *Marrero,* we stated that "[i]t is not the lapse of time but the use of the time, when the commissioner or magistrate is unavailable, to employ the condemned psychologically coercive or third degree practices [of interrogators] which is proscribed." 450 F.2d at 376. Although section 3501(c) speaks of delays no greater than six hours between arrest and arraignment, the length of pre-arraignment delay is but one of the factors to employ in evaluating the voluntariness of a confession. *Id.* at 378. Here, the district court found that there was no evidence that Rosado was subjected to protracted interrogation or threatened or cajoled into making a statement to the government's attorney. On Saturday, June 6, Rosado was not subjected to any undue questioning after his arrest processing; he was not questioned at all on June 7; and he was only questioned by the government's attorney for 30 minutes on Monday, June 8. Hence, the district court's finding, with reference to the delay issue, that Rosado's statements on June 8 were voluntary acts and not the product of a lengthy or hostile interrogation, was not clearly erroneous.

Rosado also contends that the district court misinterpreted Fed.R.Crim.P. 5(a) when it found that an arraignment of the appellants on the day of arrest was impractical. Rule 5(a) states that "[a]n officer making an arrest ... without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably availa-

---

8. The record reveals that Rosado also testified that he was 37 years old, a high school graduate, and a decorated veteran of the Vietnam war while in the Marine Corps.

ble, before a state or local judicial officer authorized by 18 U.S.C. § 3041." Rosado contends that a Saturday arraignment was not impracticable since he could have been arraigned before either a state or local judge, or in the alternative, before the same district judge who granted the warrants to search appellants' apartment and the blue canvas bag found in appellants' automobile.

Clearly, the preferable course would have been compliance with Rule 5(a) and section 3501(c). Since it is undisputed that the Rule was not complied with, we must determine what, if any, prejudice the defendant suffered by reason of the delay. Rosado's responses to the questioning on June 8 consisted not of a confession but rather of exculpatory statements. He stated that he had gone to the Holiday Inn on June 6 to meet a Mexican interested in selling gold, not drugs. He stated that he did not have a job, that he did not take drugs, and that he did not own a safe deposit box. These statements, by themselves, did not implicate the appellant in any wrongdoing and did not cause prejudice to his defense. In light of the obvious concern about coercion contemplated by the Supreme Court in *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and their progeny, some prejudice to the defendant must be demonstrated as a part of the defendant's effort to have his statements suppressed due to pre-arraignment delay. We do not find such prejudice in this case; consequently, the failure to observe the arraignment time requirement, standing alone, does not serve as a sufficient basis to suppress Rosado's exculpatory statements.

Although we agree that the circumstances herein give no indication of a coercive custodial interrogation, we announce our serious concern that lengthy delay could, under different circumstances, be used for unlawful and coercive interrogation, as well as deny a defendant the right to prompt arraignment. There is authority for the proposition that lodgng "overnight" does not constitute unnecessary delay in arraignment, *United States v. Isom,* 588 F.2d at 862–63; *United States v. Ortega,* 471 F.2d

1350, 1362 (2d Cir.1972), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Marrero,* 450 F.2d at 378. Nevertheless, although we feel constrained by the holding of *Marrero* and its progeny, our discomfort increases in direct proportion to the length of "necessary" pre-arraignment delay attributable to the unavailability of a judicial officer, even on weekends.

Still, it is clear to us that, except for the quite reasonable periods of time actually spent in processing and in routine questioning, the hours between arrest and arraignment herein were spent mainly in lodging at the MCC while awaiting arraignment. We hold therefore that, on this occasion, the delay was not "unnecessary" for purposes of Fed.R.Crim.P. 5(a) nor "unreasonable" for purposes of 18 U.S.C. § 3501(c). The statements made to the prosecutor on June 8 were thus properly admitted at trial.

### D. *Bruton Evidence*

 Rubio claims that she was deprived of her constitutional right to confront a witness against her, when the district court admitted a DEA agent's testimony of Rosado's post-arrest exculpatory statements which referred to her. The challenged testimony consisted of Rosado's statement that Rubio and Rosado were at the Holiday Inn on June 6 for a weekend vacation, and that Rubio was going to use the triple beam scale and the Clorox to do some cooking and cleaning while they were there. Rubio argues that it was error under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), to admit these statements into evidence, since the jury could have inferred that the statements by Rosado, if found to be false, were made to conceal improper conduct by herself. We find this argument meritless.

At the time the DEA agent's testimony was introduced and again in his charge to the jury, the district judge instructed the jury to consider such statements only with respect to Rosado and to disregard them as to Rubio. The judge also gave an instruction to the jury on the rationale of offering allegedly false exculpatory testimony at tri-

als. The Supreme Court in *Bruton* has indicated that such a careful foundation and curative instruction, although ineffective against "powerfully incriminating" statements, may be effective in less severe circumstances. *Id.* at 135, 88 S.Ct. at 1627. This court has also held that cautionary instructions will avoid a *Bruton* confrontation issue unless the admitted evidence is "clearly inculpatory" as to the complaining co-defendant and is "vitally important to the government's case." *United States v. Wingate,* 520 F.2d 309, 313 (2d Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976) (quoting *United States v. Catalano,* 491 F.2d 268, 273 (2d Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974)); *see also United States v. Burke,* 700 F.2d 70, 85 (2d Cir.1983); *United States v. Marin,* 669 F.2d 73, 83 (2d Cir.1982); *United States v. Perry,* 643 F.2d 38, 51 (2d Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981); *United States v. Knuckles,* 581 F.2d 305, 313 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978).

Rosado's statements clearly were not inculpatory as to Rubio; nor is this a case where a defendant has attempted to shift blame to a co-defendant. *See United States v. Garris,* 616 F.2d 626, 630 (2d Cir.), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980). Moreover, nothing new or incriminating was presented to the jury which had not already been presented through the testimony of Agent Castillo, who testified with regard to Rubio's presence at the Holiday Inn and the fact that she had shown him both the scale and the bottle of Clorox. Therefore, since we find Rosado's statements as to Rubio to be non-inculpatory, we see no reason why the jury could not have received the evidence without an impermissible taint affecting their judgment. Further, the limiting instructions given were sufficient to cure any prejudice to Rubio which may have been caused by admitting Rosado's statements into evidence.

The remaining claims on appeal relating to ministerial defects in search warrants procured for the appellants' apartment, safe deposit boxes and the trunk of their car, were thoroughly discussed and properly dismissed by the district court. *United States v. Rubio,* 526 F.Supp. 171 (S.D.N.Y.1981). We affirm the findings of the court below and hold that the defects, largely inadvertent and due to carelessness, do not merit the severe remedy of suppression.

The judgments of conviction are affirmed.