UNITED STATES of America

v.

Elias and Ruth
**GIAGOUDAKIS, Defendants.**

No. CR–86–477.

United States District Court,
E.D. New York.

March 17, 1987.

---

Tanya Y. Hill, Asst. U.S. Atty., for U.S.

Stephen Cooper, New York City, for defendant Ruth Giagoudakis.

Gerald McMahon, New York City, for defendant Elias Giagoudakis.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

The defendants, Elias and Ruth Giagoudakis, move to suppress certain statements made and physical evidence seized at the time of their arrest on the ground that Ruth Giagoudakis was arrested without probable cause. They also move to suppress certain post-arrest statements made by Elias and Ruth Giagoudakis on the ground that they were obtained in violation of the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A suppression hearing was held before the court on January 14 and January 22, 1987. At that hearing, the prosecution called two witnesses: Detective Buddy LaSala and Special Agent Joseph Sullivan. The defense called Detective Richard Platzer and Detective LaSala.

The defendants submitted a letter memorandum in support of their motion on February 6. The government filed a memorandum in opposition to the defendants' motion and on March 11, the defendants submitted a reply memorandum of law in support of their suppression motion.

*Probable Cause to Arrest*

When a defendant is arrested without a warrant, that arrest must be based on probable cause. *United States v. Watson*, 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976); *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963); *United States v. Torres*, 740 F.2d 122, 126, 128 (2d Cir.1984).

"Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed [by the person to be arrested]." *Dunaway v. New York*, 442 U.S. 200, 208, n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979); *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949), *quoting Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *United States v. Torres*, 740 F.2d at 126.

Probable cause is to be determined from the "totality-of-the-circumstances." *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *United States of America v. Ceballos*, 812 F.2d 42, 50 (2d Cir.1987). " '[T]he evidence ... must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement,' " *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality opinion of Rehnquist, J) (*quoting United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *United States v. Ceballos, supra.*

The defendants assert that probable cause to arrest Ruth Giagoudakis was lacking because the basis of her arrest was her presence at the vicinity of the crime, and her having pointed out the location of her husband's truck (the location of the drug sample exchange between Elias Giagoudakis and Gustave Haviaris) in response to an inquiry. The defendants argue that because, "Ruth Giagoudakis was in the immediate area of her produce store ... it is clear that the government failed to meet its burden" of establishing probable cause. Letter Memorandum of Feb. 6, 1987 at pp. 2–3.

A review of the testimony adduced at the suppression hearing reveals that contrary to the defendants assertions, the government has established that the arresting officers had probable cause to arrest Ruth Giagoudakis.

The facts surrounding Ruth Giagoudakis's arrest were well summarized by Detective LaSala's testimony. On June 10, 1986, LaSala and Gustave Haviaris [1] were in the vicinity of Queens Boulevard and 86th Street in Queens, New York. LaSala and Haviaris were to rendezvous with a man then known to LaSala as "Louie" [2] in order to set up a deal to purchase a kilogram of cocaine. According to LaSala, they were to meet Louie at the Georgia Diner at 86th Street and Queens Boulevard. 1/14/87 p. 4.[3] When they approached the area, Ruth Giagoudakis was standing at the corner by a telephone, looking around. *Id.* When LaSala and Haviaris neared Giagoudakis, she walked over to them and advised them that Louie was waiting for them down the block in a truck, and she pointed down the block to a blue pickup truck. *Id.* at p. 5. LaSala could see the truck from where they were standing, and it appeared to him that from the truck, the block where they were standing could be seen. *Id.* After Ruth Giagoudakis pointed to Louie, LaSala and Haviaris proceeded to walk to the truck. Ruth Giagoudakis walked away from the sight and as she did, she was looking around. *Id.* at p. 5–6. LaSala and Haviaris then entered the blue pickup. LaSala was introduced to Elias Giagoudakis, and Haviaris told Giagoudakis that he had seen the money. *Id.* Also, he inquired whether Giagoudakis had the cocaine. At that point, Giagoudakis and Haviaris began to speak in a foreign language, and Haviaris asked LaSala to step out of the truck. *Id.* at p. 6. LaSala remained right next to the truck as Haviaris and Elias Giagoudakis continued their conversation. 1/22/87 at p. 36. While this transpired, LaSala observed Giagoudakis hand a tinfoil packet to

---

1. Haviaris is also a defendant in this case. He pled guilty on Jan. 14, 1987.

2. "Louie", it was later revealed, was actually Elias Giagoudakis.

3. Citations are to the transcripts of the suppression hearing conducted on Jan. 14 and 22, 1987.

Haviaris. *Id.* at pp. 36–39. Haviaris exited the truck and as he began to walk away with LaSala, he handed the packet to LaSala. *Id.* at p. 39. LaSala testified that as the packet was handed to him, Haviaris said, "Here is a sample. We will do the deal around the corner." *Id.* at p. 40. A field test was thereafter conducted, and the substance in the packet tested positive for cocaine. After LaSala and Haviaris parted ways, LaSala made one telephone call to base. *Id.* at p. 42. LaSala told base that a surveillance had been made and instructed base to place, "the individual in the blue truck … a female by the phone with the blond hair … and Mr. Haviaris," under arrest. *Id.* at p. 43. LaSala also told base that someone in the area might be armed. Base transmitted this message to the field agents conducting the surveillance and the three individuals were placed under arrest.

At the suppression hearing, the court had an opportunity to observe the demeanor of Detective LaSala and the court finds that he was a credible witness. Further, the government's direct examination of La-Sala occurred on January 14, 1987; the defense examined him on January 22. His testimony was consistent throughout. Accordingly, the court determines that LaSala's testimony is worthy of belief.

In light of the scenario presented by Detective LaSala's testimony, it is evident that Ruth Giagoudakis's arrest was based on probable cause. The "totality-of-the-circumstances" known to the agents at the time of her arrest reasonably led the agents to the belief of her complicity in the drug transaction.

■ The defendants' version of the surveillance and subsequent arrest of Ruth Giagoudakis, as set forth in their March 11 memorandum, does not accurately reflect the course of events that transpired on June 10, 1986, nor do their arguments recognize all of the facts then known to the agents. Further, the defendants' assertion that Ruth Giagoudakis had a legitimate reason for being in the area does not annul this court's finding of probable cause. *See United States v. Webb,* 623 F.2d 758, 761

(2d Cir.1980); *see also United States v. Rodriguez,* 532 F.2d 834, 838 (2d Cir.1976).

Accordingly, the motion to suppress the physical evidence and the statements obtained as a result of the arrest of Ruth Giagoudakis is denied.

## Miranda Warnings

### Ruth Giagoudakis

The defendants argue that because there was "no testimony that either defendant ever stated that they wanted to waive their right to an attorney and to remain silent," their post-arrest statements should be suppressed. Letter Memorandum of Feb. 6, 1987 at p. 2.

In a motion to suppress, the government bears the burden of proving that the defendant's statements were voluntary. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). Further, voluntariness of the statements must be established by a preponderance of the evidence. *Id.* It has been recognized by both the Supreme Court and the Court of Appeals for the Second Circuit, however, that a defendant need not make an express statement to establish a waiver of his Fifth and Sixth Amendment rights. *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *United States v. Rubio,* 709 F.2d 146, 152 (2d Cir.1983); *United States v. Boston,* 508 F.2d 1171 (2d Cir.1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975). As stated by the Supreme Court, "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler,* 441 U.S. at 373, 99 S.Ct. at 1757.

In the instant case, Special Agent Sullivan testified that at the time he and Detective Platzer arrested Ruth Giagoudakis, he (Sullivan) informed her of her *Miranda* rights. 1/14/87 pp. 8–9, 24–25. Detective Platzer also testified that Sullivan advised Ruth Giagoudakis of her rights at the time of her arrest. 1/22/87 at p. 16. Platzer testified further that when he spoke to Ruth Giagoudakis at the D.E.A. office, he too read the *Miranda* warnings to her, *id.* at pp. 26–27, and this testimony is sup-

ported by a D.E.A. "6" written by Agent Sullivan. *Id.* at pp. 29–30.

■ The court finds the testimony of Sullivan and Platzer credible. Further, the defendants have not come forward with any evidence that contradicts the testimony of the government's witnesses. Consequently, this court finds that the government has established by a preponderance of the evidence that Ruth Giagoudakis's statements were made after she was informed of her rights pursuant to *Miranda v. Arizona, supra.*

Elias Giagoudakis

■ Agent Sullivan testified that at the time Elias Giagoudakis was arrested, Sullivan advised Giagoudakis of his *Miranda* rights. 1/14/87 at pp. 10–11. Sullivan further testified that Elias Giagoudakis made it "quite clear" that he understood those rights. *Id.* at p. 11. No evidence was proffered to contradict these statements and the court finds Sullivan's testimony credible. Accordingly, the court determines that Elias Giagoudakis was informed of his constitutional rights pursuant to *Miranda v. Arizona, supra.*

*Waiver*

The court determines that in light of the actions and statements made by the defendants after they were arrested, voluntary waiver can be inferred. Those statements may therefore be introduced at trial.

The motion is denied in all respects.

SO ORDERED.