

Villanova University School of Law Digital Repository

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2007

# USA v. Homick-Van Berry

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2196

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Homick-Van Berry" (2007). *2007 Decisions.* Paper 738.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/738

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

06-2196

UNITED STATES OF AMERICA

v.

NADINE HOMICK-VAN BERRY,
Appellant
(D.C. Crim. No. 04-cr-00269-1)

No. 06-2212

UNITED STATES OF AMERICA

v.

CLINTON VAN BERRY,
Appellant
(D.C. Crim. No. 04-cr-00269-2)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
District Judge: The Honorable Jerome B. Simandle

Submitted Under Third Circuit LAR 34.1(a)
June 26, 2007

Before: BARRY, FUENTES, and JORDAN, Circuit Judges

(Opinion Filed: July 18, 2007)

BARRY, <u>Circuit Judge</u>

This case comes before us as consolidated appeals by husband-and-wife co-defendants who were found guilty by a jury of conspiracy to rob a courier as he delivered more than $33,000 in cash from the municipality of Atlantic City to Commerce Bank. For the reasons that follow, we will affirm.

**I.**

As we write only for the parties, our discussion of the facts is brief. At the time of the offense conduct, Appellant Clinton Van Berry ("Clinton") was the Assistant Municipal Tax Collector for Atlantic City, and was married to Appellant Nadine Homick-Van Berry ("Nadine"). Federal authorities had been monitoring the couple for several years as they schemed to bribe Mayor Robert Jackson of West Cape May in exchange for the "engineer's estimate" for the borough's sewer construction contracts. In August 2003, working with Mayor Jackson, federal authorities secretly recorded the Van Berrys allegedly paying the mayor $500 in exchange for a package that purportedly contained "bid specs," but that, in fact, contained no useful information.

As the bribery scheme was unfolding, Nadine began to develop another scheme to rob a courier as he delivered the proceeds of an Atlantic City tax lien sale to Commerce Bank. She approached her longtime friend, Charles Varvaro, and sought his help.

Unbeknownst to her, Varvaro, a contractor, was also an FBI informant who had been supplying authorities with information about the Van Berrys' efforts to bribe Mayor Jackson. Using information supplied by Clinton, Nadine and Varvaro planned the robbery. Authorities eventually arrested Clinton and Nadine after an elaborate sting operation.

The Van Berrys were charged with conspiracy to commit robbery and attempted robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) and § 2 (Counts 1 and 2); and conspiracy to bribe and bribery of the mayor of West Cape May, contrary to 18 U.S.C. § 666(a)(2) and in violation of 18 U.S.C. § 371 (Counts 3 and 4). The District Court tried the Van Berrys together, but separately tried the robbery and bribery counts. The bribery trial ended in mistrials; the robbery trial resulted in guilty verdicts. After the District Court sentenced the Van Berrys, each, to 46 months' imprisonment, these appeals followed.[1]

## II.

### A.

Clinton challenges, first, the District Court's decision to admit evidence of the bribery scheme, pursuant to Rule 404(b) of the Federal Rules of Evidence, in his trial for robbery. Rule 404(b) evidence, to be admitted, must have a proper purpose; must be relevant; must have a probative value that is not substantially outweighed by its potential

---

[1] Jurisdiction in the District Court was proper under 18 U.S.C. § 3231. We have jurisdiction, pursuant to 28 U.S.C. § 1291, to review the District Court's final judgments.

for unfair prejudice; and must be accompanied by an appropriate limiting instruction. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002). We review the Court's decision to admit such evidence for abuse of discretion. *United States v. Boone*, 279 F.3d 163, 187 n.17 (3d Cir. 2002).

The District Court did not abuse its discretion in admitting Rule 404(b) evidence of the bribery scheme. Defense counsel disregarded a clear warning from the Court and opened the door to the admission of this evidence by questioning Varvaro about all payments that he had received from the FBI since January 2002 in exchange for his cooperation. Counsel was well aware that most of these payments, which totaled $10,158, were for Varvaro's cooperation in connection with the bribery investigation. Admission of the Rule 404(b) evidence was necessary, therefore, to counteract the misimpression that this money was payment solely for Varvaro's cooperation in connection with the robbery investigation. It was also necessary, in the face of defense counsel's persistent questioning into Varvaro's dealings with Nadine going back to 2000, to remedy the perception that Varvaro's good-faith effort to comply with the Court's initial directive not to testify to the bribery scheme was, in fact, an attempt to hide pertinent information from the jury.

The Rule 404(b) evidence was admissible for the independent reason that it tended to show the Van Berrys' knowledge, intent, and motive with reference to the robbery scheme. Beyond being probative of the Van Berrys' past relationship with Varvaro and Nadine's reason for involving him in the robbery scheme, the evidence also showed the Van Berrys' motive for devising the robbery scheme in the first place: to recoup losses that

4

they had sustained in their unsuccessful scheme to bribe Mayor Jackson for information about West Cape May's sewer contracts. To minimize the danger of unfair prejudice, the Court instructed jurors, on four separate occasions, that they could consider this evidence only to show Varvaro's relationship with the Van Berrys and the Van Berrys' knowledge, intent, and motive behind the robbery scheme. The significant probative value of the evidence was not substantially outweighed by any danger of unfair prejudice. *See* Fed. R. Evid. 403.

Clinton argues, next, that the District Court's limiting instructions relating to the Rule 404(b) evidence were effectively negated by contradictory or confusing instructions elsewhere in the charge. The instructions in question were the standard instructions, given in nearly every jury trial, that jurors may draw on "common sense," "experience," and reasonable "inferences" when evaluating the evidence. Clinton contends that these instructions were an invitation to consider propensity evidence. Because he did not raise this argument before the District Court, we review only for plain error. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

We find no error, much less plain error. The District Court's limiting instructions certainly were not "a mystifying cloud of words" (Br. 35), but rather, were a clear, precise, and unambiguous directive *not* to consider the Rule 404(b) evidence as evidence of propensity.[2] *See United States v. Cruz*, 326 F.3d 392, 396-97 & nn.2, 3 (3d Cir. 2003)

---

[2] We, therefore, reject Clinton's related argument that the Court committed plain error by failing specifically to prohibit the jury from using Rule 404(b) evidence to infer that he

(approving similar limiting instructions); *United States v. Mathis*, 264 F.3d 321, 326 (3d Cir. 2001) (same).  We presume that the jury heeded the Court's instructions, *Whitney v. Horn*, 280 F.3d 240, 257 (3d Cir. 2002), and find no reason to suppose that jurors understood the Court's general instructions on the use of "common sense" to override its specific limitations on the use of Rule 404(b) evidence.  *See also* 2AA140 ("[I]f testimony or exhibits have been received only for a limited purpose, you must follow the limiting instruction that I have given you.").)  Clinton's argument is meritless.

Clinton contends, finally, that the District Court erred by instructing jurors that "[n]o presumption of guilt may be raised and no inference of any kind may be drawn from the failure of a defendant to testify."  (2AA142.)  He contends that the word "failure" was pejorative and seriously affected the fairness of the proceedings.  No contemporaneous objection was raised, so we review for plain error.  *Brennan*, 326 F.3d at 182.

Once again, we find no error, and certainly no plain error, in the District Court's instruction.  Use of the word "failure" in this context is commonplace.  *See, e.g.*, *McKune v. Lile*, 536 U.S. 24, 42 (2002) ("[T]he Fifth Amendment prohibits courts from instructing a criminal jury that it may draw an inference of guilt from a defendant's failure to testify."); *James v. Kentucky*, 466 U.S. 341, 344 (1984) ("[I]n order fully to effectuate the right to remain silent, a trial judge must instruct the jury not to draw an adverse inference

---

was "more likely" to have participated in the robbery conspiracy.  The Court repeatedly instructed jurors not to consider the Rule 404(b) evidence "for any other purpose" than those for which it was admitted.  (2AA147.)

from the defendant's failure to testify if requested to do so."); *Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("It is equally routine for [judges] to instruct juries that no adverse inference may be drawn from a defendant's failure to testify . . . ."). The Tenth Circuit has rejected the very argument Clinton makes here, *see United States v. Adams*, 914 F.2d 1404, 1408-09 (10th Cir. 1990) (commenting that the argument "almost amounts to the picayune"), as do we.

## B.

We turn to Nadine's arguments. She argues, first, that statements that Clinton made to the FBI tended to incriminate her, and that the District Court's decision to permit an FBI agent to testify about them at trial violated her rights under the Confrontation Clause when Clinton exercised his Fifth Amendment right not to testify.[3] Our review of this argument, which the District Court considered and rejected, is plenary. *United States v. Lore*, 430 F.3d 190, 208-09 (3d Cir. 2005).

The Sixth Amendment guarantees the right of an accused "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), the Supreme Court held that an accused's confrontation right must be

---

[3] Clinton made the statements in an hour-long interview at an FBI office shortly after Nadine was arrested, but before he was placed under arrest. He informed agents, among other things, that he had telephoned his wife twice on the day of the robbery, first, to ask her to go to lunch that day, and later, to inquire about a problem she was having with a tooth. He also denied having any knowledge of his wife's involvement in any scheme to rob the tax office, and denied having any conversations with his wife concerning a robbery.

7

honored when a witness's out-of-court statements to law enforcement are admitted against the accused. *Crawford* and its progeny are inapplicable here, however, because the District Court admitted Clinton's statements against him alone, and specifically instructed jurors that they "may not consider Clinton Van Berry's statements to the FBI on December 17th in any way against Nadine Van Berry." (1AA225.) *See In re Brown*, 457 F.3d 392, 395 (5th Cir. 2006) (finding that *Crawford* was not violated where co-defendant's out-of-court confession was admitted solely against co-defendant); *cf. Crawford*, 541 U.S. at 40, 68 (finding Confrontation Clause violation in admission of wife's testimonial statement as evidence against husband in criminal trial). We find, therefore, no Sixth Amendment violation under *Crawford*.

We also find, as did the District Court, that Clinton's statements did not "powerfully incriminate" Nadine. *Cf. Bruton v. United States*, 391 U.S. 123, 124 n.1, 135-36 (1968) (holding that limiting instruction was insufficient to avoid Confrontation Clause violation where co-defendant's "powerfully incriminating" extrajudicial statement was admitted in joint trial with petitioner). In *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), the Supreme Court explained that when a co-defendant's confession does not, on its face, incriminate the petitioner, and does so only when linked with other evidence, it may be introduced in a joint trial with a limiting instruction. Here, Clinton's statements were not inculpatory. They did not expressly implicate Nadine in the robbery, and they certainly were not powerfully incriminating on their face. *See United States v. Belle*, 593 F.2d 487, 493 (3d Cir. 1979) (en banc) ("When a codefendant's extrajudicial statement does not

8

directly implicate the defendant, however, the *Bruton* rule does not come into play."); *see also United States v. Lopez-Lopez*, 282 F.3d 1, 13 (1st Cir. 2002); *United States v. Olano*, 62 F.3d 1180, 1195-96 (9th Cir. 1995); *United States v. Rubio*, 709 F.2d 146, 154-55 (2d Cir. 1983). Whatever incriminating value they may have had with respect to Nadine was derived by inference from other evidence introduced at trial.[4] Under the circumstances, we conclude that the Court's limiting instruction was sufficient to avoid a Confrontation Clause violation.

Nadine argues, next, that the District Court erred by denying her motion to sever her trial from that of Clinton. The decision to sever the trials of criminal codefendants rests in the sound discretion of the district court. *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005). We, therefore, review the District Court's denial of Nadine's motion for severance for abuse of discretion. *Id.*

Rule 14(a) of the Federal Rules of Criminal Procedure permits a district court to sever codefendants' trials where a joint trial "appears to prejudice a defendant." In *Zafiro*

---

   [4] Other evidence admitted at trial, moreover, substantially duplicated any incriminating inference that jurors might have drawn from Clinton's statements. For instance, the government introduced phone records showing that Clinton had placed a 22-second phone call to Nadine just as the courier was leaving the tax office on the day of the robbery, as well as recordings of Nadine describing to Varvaro the manner by which Clinton would alert her of the impending delivery of tax sale proceeds. *See Rubio*, 709 F.2d at 155 (noting that co-defendant's contested statement presented "nothing new or incriminating . . . which had not already been presented" through other evidence). Thus, even if the District Court had erred under *Bruton*, the error was harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding that Confrontation Clause errors were subject to harmless error analysis).

*v. United States*, 506 U.S. 534, 539 (1993), the Supreme Court held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." The sole trial right that Nadine identifies, however, is her right of confrontation—a right that was not violated. We conclude that the District Court did not abuse its discretion in denying Nadine's motion to sever her trial from that of Clinton.

Nadine, finally, adopts each of the arguments that Clinton raised in his appeal. For reasons already discussed, we reject those arguments.

## III.

For the foregoing reasons, we will AFFIRM the final judgments of the District Court.